STATE OF NORTH CAROLINA v. EURSTON IVON SNEED

No. 402A88

(Filed 26 July 1990)

**1. Criminal Law § 35 (NCI3d) — murder and attempted armed robbery — evidence that another committed offense — admissible**

The trial court erred in a prosecution for murder and attempted armed robbery by excluding testimony that another committed the crime where the proffered evidence tended to show that a specific person other than defendant robbed and killed the victim and the evidence was also inconsistent with the guilt of defendant.

**Am Jur 2d, Evidence §§ 441, 496.**

2. **Criminal Law § 73.3 (NCI3d)— statement of intent—state of mind exception to hearsay rule**

Testimony in a prosecution for murder and attempted armed robbery that a person other than defendant stated that he intended to rob a service station on the night the victim was killed was admissible. N.C.G.S. § 8C-1, Rule 803(3) allows the admission of a hearsay statement of a then existing intent to engage in a future act.

**Am Jur 2d, Evidence §§ 441, 496.**

3. **Criminal Law § 73.4 (NCI3d)— evidence that another committed crime—hearsay—startling event—admissible**

Testimony in a prosecution for murder and attempted armed robbery that a person other than defendant had returned to the witness's presence and said that he had done something he didn't want to do was admissible. N.C.G.S. § 8C-1, Rule 803(2) allows the admission of a statement made by declarant relating to a startling event and made while the declarant was under the stress of that event.

**Am Jur 2d, Evidence §§ 441, 496.**

4. **Criminal Law § 66.1 (NCI3d)— murder and attempted armed robbery—witness—identification not incredible**

Eyewitness identification testimony in a prosecution for murder and attempted armed robbery was not inherently incredible and was properly admitted where the witness's testimony that he had carefully observed the perpetrator under artificial lighting in order to be able to identify him and that the perpetrator was the defendant was not inherently impossible or in conflict with indisputable physical facts or laws of nature. The weight to be given the identification of defendant was for the jury.

**Am Jur 2d, Evidence §§ 367, 372.**

APPEAL of right pursuant to N.C.G.S. § 7A-27 from a judgment entered by *Phillips, J.*, in the Superior Court, PITT County, on 29 April 1988, sentencing the defendant to life imprisonment for murder in the first degree and to imprisonment for a term of thirty years for attempted armed robbery. Heard in the Supreme Court on 13 February 1990.

*Lacy H. Thornburg, Attorney General, by G. Lawrence Reeves, Jr., Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant was tried on true bills of indictment charging him with robbery with a dangerous weapon and with the first-degree murder of Willie Hubert Tripp, Sr. The State's evidence at trial tended to show that Willie Hubert Tripp owned and operated Tripp's Service Station in Greenville. On the evening of 31 December 1983, Tripp was shot and killed at his service station.

Douglas Adams testified that on 31 December 1983, shortly after 6:15 p.m., he was across the street from Tripp's Service Station and heard several gunshots. He looked toward the gas station and saw a black male and the victim struggling at the door. He watched the struggle for approximately ninety seconds. He observed that the black male was about six feet tall, weighed about 160 pounds and wore a dark windbreaker and dark pants. At the trial, Adams identified the defendant as the man he saw struggling with the victim.

Greenville police officer John Fleming testified that he arrived at Tripp's Service Station at 6:36 p.m. on 31 December 1983. At that time, Tripp was wounded but still alive. Officer Fleming testified that Tripp told him that a young black male had tried unsuccessfully to rob him.

Testimony from other witnesses placed the defendant near Tripp's Service Station on 31 December 1983. They testified that the defendant was armed and wore a dark jacket and jeans.

At trial, the defendant denied shooting Tripp. Linda Crandall testified that the defendant was with her at the time of the shooting.

The jury found the defendant guilty of first-degree murder and attempted armed robbery. A sentencing proceeding was conducted and the jury recommended a sentence of life imprisonment for the first-degree murder. The trial court entered judgment sentencing the defendant to life for the murder and entered, but arrested, judgment imposing a thirty year sentence for the attempted armed robbery.

Additional evidence and other matters relevant to the defendant's specific assignments of error are discussed at other points in this opinion.

[1]   On appeal, the defendant argues that the trial court erroneously excluded proffered testimony of Steven Ward tending to show that Joe Reid, not the defendant, committed the crimes for which the defendant was charged. We agree.

Prior to trial, the State made a motion *in limine* seeking to exclude the testimony of Steven Ward. At that time, the trial court deferred ruling on the State's motion. When the defendant sought during the trial to call Steven Ward as a witness, the trial court considered the State's pending motion to exclude Ward's testimony. Thereafter, the trial court refused to let Ward testify before the jury. The trial court allowed Ward's testimony to be entered in the record as an offer of proof made by the defendant out of the presence of the jury. During the defendant's offer of proof, Ward testified as follows:

Q. Mr. Ward, did you see . . . Joe Reid that night?

A. Yes, I did.

Q. December 31, 1983?

A. Yes.

Q. And who else was present when you saw Joe Reid?

A. Joe Cobb.

Q. Did you have a conversation with Joe Reid?

A. Indirect, yes.

Q. Well, would you tell us what you said to him and what he said to you?

. . .

A. He asked Joe Cobb would I take him out to rob a place and Joe Cobb asked me would I do it. And Joe Reid said, well, you just take me out there and I'll do it; all you have to do is just sit in the car. I told him I didn't want to have anything to do with it.

Q. Okay. And he wanted to go where?

. . .

**STATE v. SNEED**

[327 N.C. 266 (1990)]

A. He wanted to go on Memorial Drive.

Q. Where on Memorial Drive?

A. He asked me to take him out to Tripp's Service Station.

. . .

Q. Did he indicate to you what he was going to do when he got to Tripp's Service Station?

A. He told me that all he wanted me to do was sit in the car, he would do the job.

. . .

Q. What did you understand him to mean that he would do the job?

A. That he would do the job, in other words — well, I understand robbery.

. . .

Q. Did Joe Reid have a gun?

A. Yes, he had a gun.

. . .

Q. Now, after — did there come a time when Joe Reid left the trailer?

A. Yes, he left. Right after he left, Joe Cobb and I left and went and got a beer at Earl's store and went back to the mobile home. About an hour later Joe Reid came back.

. . .

Q. I'm sorry. Go ahead.

A. He came back and he had been running. I could tell he had been running because of lack of breath, and he told Joe he did something he didn't want to do.

Q. That he had did something he didn't want to do?

A. Yes.

The trial court excluded Ward's testimony on the grounds that it was not admissible as either substantive or impeachment

evidence. We disagree. Evidence that another committed a crime is relevant and admissible as substantive evidence, so long as it points directly to the guilt of some specific person or persons *and* is inconsistent with the guilt of the defendant. *State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987).

The proffered testimony of Ward, which was excluded here, specifically implicated Joe Reid as Tripp's killer. Ward's excluded testimony tended to show that Joe Reid planned to rob Tripp's Service Station on the same evening that the victim was killed. Ward's testimony not only tended to show that Reid was armed with a gun and in the neighborhood of Tripp's Service Station at approximately the time of the crimes in question, but also that Reid carried out his announced plan to rob the station. Moreover, Ward's excluded testimony tended to show that Reid's clothing and physical description closely matched those of the killer as described by the eyewitness to the murder and robbery of 31 December 1983. The excluded evidence tended to show that Joe Reid, a specific person other than the defendant, robbed Tripp's Service Station and killed Tripp. Since all of the evidence tended to show that only one person committed the robbery and murder, Ward's testimony implicating Joe Reid was also inconsistent with the guilt of the defendant. Therefore, the excluded testimony was relevant and admissible as substantive evidence.

**[2]** The State argues that, in any event, certain portions of Ward's proffered testimony were inadmissible hearsay. We disagree. Rule 803(3) of the North Carolina Rules of Evidence provides that testimony of a witness, concerning a statement by a declarant other than the witness, as to the declarant's then-existing state of mind is not excludable under the hearsay rule. N.C.G.S. § 8C-1, Rule 803(3) (1988). One part of Ward's testimony, which the State says was excludable as hearsay, tended to show that Reid had stated that he intended to rob Tripp's Service Station on the same night that the station was robbed and Tripp was killed. "Rule 803(3) allows the admission of a hearsay statement of a then-existing intent to engage in a future act." *State v. McElrath*, 322 N.C. 1, 17, 366 S.E.2d 442, 451 (1988). Therefore, Ward's testimony as to Reid's declaration that he wanted to go rob Tripp's Service Station was admissible as evidence of Reid's then-existing intent to engage in a future act.

**[3]** Ward's testimony concerning Reid's statement that "he had [done] something that he didn't want to do" was also admissible at trial. Rule 803(2) of the North Carolina Rules of Evidence provides that testimony of a witness as to a statement made by a declarant relating to a startling event and made while the declarant was under the stress of that event is not excludable under the hearsay rule. N.C.G.S. § 8C-1, Rule 803(2) (1988). In this case, Ward testified that on the night of the crimes charged Reid burst into a mobile home without knocking and immediately declared that he had done something that he didn't want to do. At the time, Ward observed that Reid was out of breath because he had been running. Apparently, Reid was still under stress and excitement caused by the event to which he said he had been a party. Therefore, Ward's testimony concerning Reid's statement was admissible under Rule 803(2).

Here the proffered testimony of Ward, pointing to Joe Reid as the perpetrator of the murder and robbery in question, should have been admitted as substantive evidence; the excluded evidence was relevant and admissible under the North Carolina Rules of Evidence. Further, we conclude on the record before us that the error in excluding this evidence was prejudicial within the meaning of N.C.G.S. § 15A-1443(a) and that the defendant is entitled to a new trial.

**[4]** Because of the likelihood that it will arise again upon any retrial of this case, we now address an additional issue raised by the defendant. Relying on cases such as *State v. Miller*, 270 N.C. 726, 154 S.E.2d 902 (1967), the defendant argues that the trial court committed reversible error by admitting inherently incredible identification testimony of an eyewitness, which was inadmissible as a matter of law. *Miller* was not, strictly speaking, a case involving the admissibility of evidence. Instead, *Miller* concerned the question of whether the State's evidence was sufficient to withstand a motion to dismiss (at that time denominated a motion for nonsuit). This Court concluded that, where the sole evidence tending to identify the defendant as the perpetrator of the crime charged was evidence which was inherently impossible or in conflict with indisputable facts or laws of nature, the evidence was not sufficient to take the case to the jury. *Id.; State v. Cox*, 289 N.C. 414, 422-23, 222 S.E.2d 246, 253 (1976). In later cases, this Court

extended the *Miller* test to apply to instances where the defendant challenges the admissibility of identification evidence on grounds that it is inherently incredible. In all these cases the Court held the identification testimony admissible on grounds that there was "a reasonable possibility of observation sufficient to permit subsequent identification."

*State v. Green*, 296 N.C. 183, 188, 250 S.E.2d 197, 201 (1978).

In the present case we conclude that the eyewitness who testified at trial and purported to identify the defendant as the perpetrator of the crimes charged had a reasonable possibility of observing the perpetrator of the crimes sufficient to permit his subsequent identification of the perpetrator, since his identification testimony was not inherently incredible. Therefore, the trial court was not required as a matter of law to exclude the witness's identification testimony, and the trial court did not err by allowing its admission into evidence for the jury's consideration.

The witness Douglas Adams testified that he observed the defendant struggling with the victim at the service station shortly after 6:15 p.m. on 31 December 1983. His testimony tended to show that he carefully observed the defendant and the victim for approximately ninety seconds and that he could see the defendant's face clearly under the bright fluorescent lights lighting the area of the gasoline pumps outside the service station. Adams' testimony also tended to show that he concentrated particularly on being able to identify the defendant and the clothing the defendant was wearing, because Adams had "just seen a man shot" and knew he would have to identify the defendant at some later time.

The defendant argues that records of the United States Naval Observatory establish that sunset on 31 December 1983 occurred at 5:06 p.m. in Greenville, and that civil twilight ended at 5:34 p.m. there. Therefore, the defendant argues that, "except for any artificial light, it was pitch black . . ." when Adams observed the perpetrator of the crimes in question, even though Adams and another witness testified that it was not yet dark at the time the crimes in question were committed. The defendant also points out that Adams' testimony indicates that he observed the commission of the crime across a busy six-lane highway from a distance of no less than 170 feet. Further, the defendant points out that the description of the perpetrator given the authorities by Adams shortly after the crime was very general in nature. Even assuming

that the crimes in question were committed after dark and that Adams' observations were made under the conditions the defendant points out, however, we conclude that Adams' testimony was admissible. His testimony that he carefully observed the perpetrator under artificial lighting in order to be able to identify him and that the perpetrator was the defendant was not inherently impossible or in conflict with indisputable physical facts or laws of nature. As Adams' identification of the defendant as the perpetrator of the crimes in question was not inherently incredible, it was admissible; the weight to be given his identification of the defendant was a question for the jury. *State v. Green*, 296 N.C. at 188, 250 S.E.2d at 201.

For reasons previously discussed, we conclude that the trial court erred in excluding evidence pointing to the guilt of a person other than the defendant and inconsistent with the guilt of the defendant for the crimes charged. As we also conclude that this error was prejudicial, the defendant is entitled to a new trial.

New trial. ·