STATE OF NORTH CAROLINA v. LYLE CLINTON MAY

No. 509A99

(Filed 5 October 2001)

**1. Evidence— guilt of another—mental history**

The trial court did not err in a capital first-degree murder prosecution by excluding evidence allegedly indicating that someone else had killed the victim. Such evidence must point directly to the guilt of a specific person and must be inconsistent with the defendant' guilt. Here, even if the evidence of this person's mental history indicated that he could have been suspected of this crime, it was not inconsistent with defendant's guilt. Furthermore, defendant failed to make an offer of proof for some of the evidence.

**2. Sentencing— capital—prosecutor's argument—life in prison**

The trial court did not err by not intervening ex mero motu during the State's closing arguments in a capital sentencing proceeding where the prosecutor commented on the life defendant would have in prison.

**3. Criminal Law— prosecutor's argument—capital sentencing—mental health expert—financial considerations**

The trial court did not err by not intervening ex mero motu during the State's closing arguments in a capital sentencing proceeding where the argument fell within the recognized area of challenging an expert's opinion because of the financial consideration involved.

4. **Criminal Law— prosecutor's argument—capital sentencing—mental health diagnosis**

The trial court did not err by not intervening ex mero motu during the State's closing arguments in a capital sentencing proceeding where the prosecutor argued that defendant's mental health diagnosis was made so as to result in insurance compensation and that defendant was not mentally ill.

5. **Criminal Law— prosecutor's argument—capital sentencing—garbage**

The trial court did not err by not intervening ex mero motu during the State's closing arguments in a capital sentencing proceeding where the prosecutor argued that a person's acts are garbage when a person's beliefs are garbage.

6. **Sentencing— capital—prosecutor's arguments—cumulative effect—no error**

The cumulative effect of a prosecutor's closing arguments in a capital sentencing proceeding did not warrant a new sentencing hearing where the trial court did not err by failing to intervene in any of the arguments.

7. **Appeal and Error— preservation of issues—failure to object**

A defendant in a capital first-degree murder prosecution waived appellate review of issues involving jury selection and an ex parte motion for hospital records by failing to object.

8. **Homicide— first-degree murder—short-form indictment**

North Carolina's short-form indictment for murder does not violate due process.

9. **Sentencing— capital—instructions—aggravating circumstance—especially heinous, atrocious, or cruel murder—instructions**

The trial court did not err by giving Pattern Jury Instruction 150.10 on the especially heinous, atrocious, or cruel aggravating circumstance in a capital sentencing proceeding.

10. **Sentencing— capital—mitigating circumstances—nonstatutory—instructions—mitigating value**

The trial court did not err in a capital sentencing proceeding by instructing the jury that it need not consider nonstatutory mit-

igators unless it found that those circumstances had mitigating value.

**11. Sentencing— capital—instructions—use of "may"**

The trial court did not err in a capital sentencing proceeding by using the word "may" in the instructions on Issues Three and Four on the Issues and Recommendation as to Punishment form.

**12. Sentencing— capital—death penalty—not disproportionate**

A death sentence was not disproportionate where defendant was convicted on the theory of premeditation and deliberation; multiple aggravating circumstances were found to exist; defendant did not show concern for the victims, but attempted to hide his crime; he showed very little remorse; and one of the victims was a small child, less than five years old and under four feet tall, who weighed only 51 pounds.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two sentences of death entered by Downs, J., on 18 March 1999 in Superior Court, Buncombe County, upon jury verdicts finding defendant guilty of two counts of first-degree murder. Heard in the Supreme Court 14 May 2001.

*Roy A. Cooper, Attorney General, by William P. Hart, Special Deputy Attorney General, and Robert C. Montgomery, Assistant Attorney General, for the State.*

*Marshall Dayan for defendant-appellant.*

ORR, Justice.

Defendant was indicted 3 November 1997 for the first-degree murders of Valeri Sue Riddle and Kelley Mark Laird, Jr. On 12 March 1999, a jury found defendant guilty of both charges. Following a capital sentencing proceeding, the jury recommended a sentence of death for each murder, and the trial court entered judgments accordingly.

After consideration of the assignments of error brought forward on appeal by defendant and a thorough review of the transcript of the proceedings, the record on appeal, the briefs, and oral arguments, we find no error meriting reversal of defendant's convictions or sentences.

STATE v. MAY

[354 N.C. 172 (2001)]

On 8 July 1997, Diane Boussois was at her home in Asheville. Her son, Darrell Godfrey, was entertaining guests. These guests included defendant in this case, Lyle Clinton May, and the victims in this case, Valeri Sue Riddle and her four-year-old son, Kelley Mark Laird. The next morning, 9 July 1997, Ms. Boussois left home and saw Valeri Riddle, Mark Laird, and Darrell Godfrey up and awake. When Ms. Boussois returned home around 11:30 p.m., the house was empty, but she found a red liquid on the floor which she later learned was blood.

In the early morning hours of 10 July 1997, the Asheville Police found the dead bodies of Valeri Riddle and Mark Laird on a pull-off area on the Blue Ridge Parkway. The police found at the Parkway scene a variety of personal items, including a Swiss army knife with a broken blade. They also found a larger knife 2.3 miles from the Parkway scene.

Near the time that the police discovered the bodies of the victims, they also located defendant outside a restaurant in Asheville. Asheville Police Officer Darren Moore saw defendant in the parking lot and noticed that he had blood on his shirt, socks, and shoes, and cuts on his arms. The police later found that some of this blood came from the victims. After confronting defendant, Officer Moore arrested him without incident and took him to the police station. There, during a police interview, defendant confessed. In addition to an oral confession, defendant gave a confession in his own handwriting. In that written statement, he confessed that he had stabbed Valeri Riddle to death because she "got on [his and Godfrey's] nerves." He also wrote that he had killed Mark Laird because he "did not want to see the kid crying or having the memory of his mom getting killed." He then described how he had disposed of the bodies and how Godfrey had "watched both killings and went along willingly for the ride."

The police also found significant physical evidence indicating defendant's guilt. That evidence included DNA from both victims on defendant's socks and shorts and defendant's DNA on the pillowcase from Ms. Boussois' home, where the murders had occurred. A box of matches found on defendant at the time of his arrest was of the same kind as matches found near the victims' bodies. The police also found defendant's bloody fingerprint on the trunk of Valeri Riddle's car.

The autopsy report showed that Valeri Riddle had been stabbed multiple times. She had suffered blunt-force injuries that fractured

her skull, and her neck had been broken. Mark Laird had been stabbed and beaten. His blunt-force injuries were likely made by a heavy, cylindrical object like a pipe or baseball bat.

[1] Defendant first contends that the trial court erred because it excluded, as irrelevant, evidence allegedly indicating that Darrell Godfrey had killed the victim. Defendant specifically complains about three pieces of evidence. First, defendant sought to elicit testimony from Godfrey's mother, Ms. Boussois, that Godfrey had been hospitalized at Broughton Hospital because he was hearing voices telling him to kill people. Second, defendant sought to introduce evidence that Godfrey and the victim had a heated argument days before the homicide. Third, defendant tried to submit testimony from Dr. Raheja, a staff psychiatrist at Broughton Hospital, concerning Godfrey's intake assessment and discharge summary. This testimony would have revealed that Godfrey had told doctors he had hallucinations telling him to kill himself and other people and that Godfrey had a history of violent conduct, including beating a man with a baseball bat.

The trial court properly excluded this evidence on several grounds. This Court has stated:

[W]here the evidence is proffered to show that someone other than the defendant committed the crime charged, admission of the evidence must do more than create mere conjecture of another's guilt in order to be relevant. Such evidence must (1) point directly to the guilt of some specific person, and (2) be inconsistent with the defendant's guilt.

*State v. McNeill*, 326 N.C. 712, 721, 392 S.E.2d 78, 83 (1990). Furthermore, "[t]his Court has consistently required that such evidence satisfy both prongs." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 222 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). For example, in *State v. Sneed*, 327 N.C. 266, 393 S.E.2d 531 (1990), this Court held that the trial court improperly excluded evidence that another could have committed the crime because it found the following:

The excluded evidence tended to show that Joe Reid, a specific person other than the defendant, robbed Tripp's Service Station and killed [the victim]. Since all of the evidence tended to show that only one person committed the robbery and murder, [the] testimony implicating Joe Reid was also inconsistent with the

guilt of the defendant. Therefore, the excluded testimony was relevant and admissible as substantive evidence.

*Id.* at 271, 393 S.E.2d at 533-34. The evidence in *Sneed* demonstrated not only that a third party committed the crime, but also that the defendant did not commit the crime. More recently, in *State v. Israel,* 353 N.C. 211, 539 S.E.2d 633 (2000), this Court again ruled that the trial court should have admitted evidence of the possible guilt of a third party. There, the evidence pointed to a specific third party who had motive and opportunity to kill the victim. *Id.* at 219, 539 S.E.2d at 638. The evidence also indicated that the defendant and the third party did not visit the victim at her apartment, where the murders were committed, at the same time. The defendant was seen on the apartment complex's surveillance videotape on one day, *id.* at 213, 539 S.E.2d at 635, and the third party on two different days, *id.* at 215, 539 S.E.2d at 636. The evidence was inconclusive as to when the victim was killed.

On the other hand, in *State v. Rose,* 339 N.C. 172, 451 S.E.2d 211, this Court found no error when the trial court excluded evidence that a third party might have committed the crime. The Court stated, "the evidence here . . . simply indicated that one person felt that [a third party] might have been 'involved.' This evidence was not inconsistent with defendant's guilt." *Id.* at 191, 451 S.E.2d at 222.

The case at bar is similar to *Rose.* Defendant in this case attempted to submit three pieces of evidence. Even if this evidence indicated that Godfrey could have been suspected of committing the crime for which defendant was accused, defendant failed to produce any evidence that was inconsistent with his own guilt. On the contrary, the State's evidence shows that Godfrey and defendant were both on the scene when the homicide occurred. Godfrey's involvement in the crime is entirely consistent with defendant's guilt. Thus, the speculative evidence that Godfrey could have killed the victims is not relevant to whether defendant in fact did kill the victims.

Furthermore, we will not disturb the trial court's decision to exclude Ms. Boussois' testimony because defendant failed to make an offer of proof for that evidence. This Court has stated:

In order for a defendant to preserve for appellate review the exclusion of evidence, "a defendant must make an offer of proof as to what the evidence would have shown or the relevance and

content of the answer must be obvious from the context of the questioning." *State v. Geddie*, 345 N.C. 73, 95-96, 478 S.E.2d 146, 157 (1996), *cert. denied*, 522 U.S. 825, 139 L. Ed. 2d 43 (1997). " 'It is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify.' " *State v. Johnson*, 340 N.C. 32, 49, 455 S.E.2d 644, 653 (1995) (quoting *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985)).

*State v. Hipps*, 348 N.C. 377, 407, 501 S.E.2d 625, 643 (1998), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 114 (1999). This assignment of error is therefore overruled.

[2] Defendant next contends that the trial court erred by failing to intervene *ex mero motu* during the State's closing arguments at the sentencing proceeding. Defendant argues that the trial court erred by not intervening to strike improper arguments made by the prosecutor. Because defendant failed to object to these allegedly improper statements during the closing arguments, he "must demonstrate that the prosecutor's closing arguments amounted to gross impropriety." *State v. Rouse*, 339 N.C. 59, 91, 451 S.E.2d 543, 560 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995). " '[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.' " *State v. Warren*, 348 N.C. 80, 126, 499 S.E.2d 431, 457 (quoting *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979)), *cert. denied*, 525 U.S. 915, 142 L. Ed. 2d 216 (1998). "We further emphasize that 'statements contained in closing arguments to the jury are not to be placed in isolation or taken out of context on appeal. Instead, on appeal we must give consideration to the context in which the remarks were made and the overall factual circumstances to which they referred.' " *State v. Guevara*, 349 N.C. 243, 257, 506 S.E.2d 711, 721 (1998) (quoting *State v. Green*, 336 N.C. 142, 188, 443 S.E.2d 14, 41, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994)), *cert. denied*, 526 U.S. 1133, 143 L. Ed. 2d 1013 (1999).

Defendant claims that the trial court erred by failing to intervene on three specific occasions. First, he claims that the trial court should have intervened when the prosecutor commented as follows on the life defendant would have in prison:

I know that it's hard when you sit here and you look at [the defendant] like that in his shirt and sometimes his tie, it's hard to picture him in a prison yard playing cards with the guys, in a prison gym punching a punching bag, in a prison cell having a snack, watching TV or listening to the radio. But if your verdict is life, one day soon that's what he'll be doing, and life will not be worse for him.

He isn't someone who will sit there contemplating what he's done and where he's gone wrong. You know that from the evidence. He'll sit there eating his fireballs, savoring his memory of how much he enjoyed what he did.

Defendant claims that this argument stated facts outside the record and amounted to prosecutorial misconduct.

This Court, however, has often rejected almost identical arguments. *See, e.g., State v. Smith,* 347 N.C. 453, 467, 496 S.E.2d 357, 365, *cert. denied,* 525 U.S. 845, 142 L. Ed. 2d 91 (1998); *State v. Alston,* 341 N.C. 198, 252, 461 S.E.2d 687, 717 (1995), *cert. denied,* 516 U.S. 1148, 134 L. Ed. 2d 100 (1996); *State v. Reeves,* 337 N.C. 700, 732, 448 S.E.2d 802, 817 (1994), *cert. denied,* 514 U.S. 1114, 131 L. Ed. 2d 860 (1995). In *State v. Smith,* 347 N.C. 453, 496 S.E.2d 357, the defendant contended that the prosecutor improperly argued to the jury that if defendant were sentenced to life in prison, he would spend his time comfortably doing things such as playing basketball, lifting weights, and watching television. This Court found no error because the prosecutor's argument " 'served to emphasize the State's position that the defendant deserved the penalty of death rather than a comfortable life in prison.' " *Id.* at 467, 496 S.E.2d at 365 (quoting *Alston,* 341 N.C. at 252, 461 S.E.2d at 717). The prosecutor's statements in this case are nearly identical to the statements in *Smith.* While the prosecutor improperly argued facts not in the record, the trial court still did not abuse its discretion by failing to intervene *ex mero motu.*

[3] Defendant also complains about portions of the prosecutor's argument concerning defendant's expert witness, a psychiatrist. Again, however, defendant failed to object, so he must prove that the prosecutor's statements amounted to gross impropriety. *Rouse,* 339 N.C. at 91, 451 S.E.2d at 560. In his closing argument, the prosecutor challenged the evaluation of defendant's expert as follows:

STATE v. MAY

[354 N.C. 172 (2001)]

Who can deny that there's a very real struggle between the forces for evil and the forces for good in the world? Who can deny that?

In our collective consciousness, that sometimes has been overborne by a cycle that has worked its way into our criminal justice system. Here's a psychiatrist making fifteen hundred dollars a day retirement income, and the best he can do for excuse-ology [sic] is come here and say "He's faking normal." He says the mental status exams are normal, the physiology exams they did on him at Broughton they're normal. He says malingering, yeah, there's some element of malingering. He's faking, but he's faking normal. He's faking normal. That's the best he can do.

The prosecutor then continued with the portion to which defendant objects:

A guy who's making fifteen hundred dollars a day is absolutely going to tell you every time you show him a crime like this that it's the result of mental illness. His way of life depends on that. You think somebody's going to pay anybody fifteen hundred dollars a day to walk in here and say that is one mean guy; that guy does whatever he wants, whenever he wants, wherever he wants, and that makes him very dangerous to all living creatures? Nobody's paying someone fifteen hundred dollars a day to do that, ladies and gentlemen, to come in here and say that.

And there is a world of difference between a clinical psychologist who seeks to help you when you're stressed or you're suffering and an interested professional witness, somebody who builds up a resume and has a long-term goal of making fifteen hundred bucks a day doing what he did.

Defendant claims that this argument was grossly improper because it accused his expert witness of being "unethical and venal."

This Court, however, has rejected virtually identical challenges in the past. *See, e.g., State v. Cummings*, 352 N.C. 600, 626, 536 S.E.2d 36, 55 (2000), *cert. denied*, —— U.S. ——, 149 L. Ed. 2d 641 (2001); *State v. Atkins*, 349 N.C. 62, 83-84, 505 S.E.2d 97, 111 (1998), *cert. denied*, 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). In *State v. Cummings*, 352 N.C. 600, 536 S.E.2d 36, the defendant contended that the prosecutor's arguments implied bias on the part of the defendant's expert and were so grossly improper that they required intervention by the trial court *ex mero motu*. In that case, the prose-

cutor stated that the expert was hired and paid by the defendant for his favorable diagnosis. We found no error.

In this case, as in all cases, the prosecution is allowed wide latitude in its arguments, especially at sentencing, and is permitted to argue not only the evidence presented, but also all reasonable inferences that can be drawn from the evidence. *State v. Garner*, 340 N.C. 573, 598, 459 S.E.2d 718, 731 (1995), *cert. denied*, 516 U.S. 1129, 133 L. Ed. 2d 872 (1996). Here, as in *Cummings*, the prosecutor's statements identified by defendant as being objectionable, but not objected to by defendant at trial, "did not exceed the 'broad bounds allowed in closing arguments at the capital sentencing proceeding.' " *Cummings*, 352 N.C. at 626, 536 S.E.2d at 55 (quoting *State v. Thomas*, 350 N.C. 315, 362, 514 S.E.2d 486, 514, *cert. denied*, 528 U.S. 1006, 145 L. Ed. 2d 388 (1999)). Defendant does not explain why the prosecutor's argument was improper, except to state that the prosecutor accused defendant's expert witness of being "unethical and venal." However, we do not view the prosecutor's argument as going so far as to accuse the expert witness of being "unethical and venal." While it would be unquestionably inappropriate under these facts to argue that an expert witness had, in essence, offered perjured testimony in exchange for a fee, the argument in question falls within the recognized area of challenging an expert's opinion because of the financial consideration involved. *Id.* The prosecutor's argument was that defendant would not have offered his expert as a witness if the expert's testimony would have been injurious to the defendant. Thus, based on the evidence, the trial court's failure to intervene *ex mero motu* did not amount to gross impropriety, and therefore, the trial court did not abuse its discretion.

[4] Defendant next complains about the prosecutor's statements during his closing argument about the insurance procedures at Broughton Hospital, where defendant received a psychiatric exam. The prosecutor argued that the defendant was not cured during his time at Broughton because he was not mentally ill. He then stated:

> See this book, the DSM-IV? Remember back when [defendant's expert witness] was on the stand and I said it's loaded with insurance codes, isn't it? He said, yes, it is.

> That's why they diagnose him at all. That's why they give him any diagnosis. Because they can't get paid if they don't have an insurance code attached to a diagnosis.

Again, defendant did not object to this portion of the prosecutor's argument and thus must show that it was grossly improper. He has failed to do so.

Here, as with defendant's complaint regarding the prosecutor's statements about the defense expert's possible bias, the prosecutor's statements identified by defendant as being objectionable, but not objected to by defendant at trial, were supported by the direct evidence of record or by reasonable inferences that could be drawn from that evidence. They "did not exceed the 'broad bounds allowed in closing arguments at the capital sentencing proceeding.'" *Cummings*, 352 N.C. at 626, 536 S.E.2d at 55 (quoting *Thomas*, 350 N.C. at 362, 514 S.E.2d at 514). Defendant claims that the argument was improper because the prosecutor accused the state hospital of fraud, and there was nothing to support this allegation. However, during trial, the prosecutor asked defendant's expert, "And [the DSM-IV is] loaded with insurance codes so that psychiatrists and psychologists can get reimbursed by insurance companies for seeing people?" Defendant's expert answered, "I think it's fair [to say that]." He was then asked: "Do you remember testifying in a previous case . . . that you can't take this stuff from the DSM-IV too seriously?" He responded, "I'm sure I've said that in many cases." Here again, we view the prosecutor's argument as being based on inferences from the evidence that the medical diagnosis was categorized in such a way as to fall within the various insurance codes provided. Furthermore, the argument that the diagnosis was made so as to result in insurance compensation is not so grossly improper as to warrant intervention by the trial court *ex mero motu*, and thus, the trial court did not abuse its discretion.

[5] Defendant next complains that the prosecutor's closing argument was improper because he called defendant "garbage." In fact, he did not call defendant "garbage." The prosecutor's statement, in context, was:

> And when you are the kind of person [defendant] is, he thinks he can do whatever he wants, whenever he wants and wherever he wants; he thinks that having family rules like going to church on Sunday and not doing drugs are bothersome, you perpetrate atrocious conduct. Garbage in/garbage out. Because you have no moral rectitude. And the more those psychiatrically-based beliefs take hold on our consciousness, the more foolishness and injustice results.

The prosecutor did not call defendant "garbage." Rather, he intimated that, in effect, when a person's beliefs are "garbage," then a person's acts are usually "garbage." The trial court therefore did not abuse its discretion by failing to intervene *ex mero motu*.

[6] Defendant's final complaint regarding the prosecutor's closing argument is that the trial court's failure to intervene *ex mero motu* in each of the above instances cumulatively warrants a new sentencing hearing. However, because the trial court did not err in failing to intervene in any of these instances, there is no cumulative error. This assignment of error is therefore overruled.

[7] Defendant argues several other issues. All of these contentions, however, are barred because defendant failed to object to any of them. With certain exceptions not applicable to any of these contentions, a timely objection at trial is required to preserve an alleged error on appeal. N.C.G.S. § 15A-1446(a), (b) (1999); N.C. R. App. P. 10(b)(1); *State v. Adams*, 335 N.C. 401, 411, 439 S.E.2d 760, 765 (1994).

Defendant's failure to object therefore precludes him from raising these issues on appeal. First, defendant is barred from arguing that the trial court committed reversible error by allowing the prosecutor to peremptorily challenge prospective juror Harill Heath because of his religion. The record reveals that defendant failed to object to the prosecutor's challenge. This assignment of error is therefore overruled.

Second, defendant is barred from arguing that the trial court erred when it reopened *voir dire* on prospective juror Edward Chandler and allowed the State to peremptorily challenge that juror. The record reveals that defendant failed to object to the trial judge's decision to reopen *voir dire* even after being explicitly asked if he had any objection. This assignment of error is therefore overruled.

Third, defendant is barred from challenging the order issued before trial that resulted from an *ex parte* motion by the State for the Broughton Hospital psychiatric records of codefendant Darrell Godfrey and one of the victims, Valeri Riddle. Defendant claims that the trial court had no authority to issue this order *ex parte*, that the trial court failed to make the necessary findings to issue the order, and that the *ex parte* hearing violated his Sixth Amendment right to counsel. The record again reveals that defendant lodged no objection, constitutional or otherwise, to the *ex parte* hearing, or to the order,

either at trial or before. Nor did he make a motion to strike the order or to prevent the State from using the records the order produced. He further failed to appeal from that order or to petition for appellate review when he became aware of the order before trial. Defendant has therefore waived any right to appellate review of this issue.

## PRESERVATION ISSUES

[8] Defendant also makes several contentions that he admits this Court has already decided against him. His first preservation claim is that North Carolina's short-form indictment for murder violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We have previously held, however, that the short-form indictment does not violate due process because it gives the defendant notice that he was charged with first-degree murder and that the maximum penalty to which he could be subjected is death. *See State v. Braxton*, 352 N.C. 158, 175, 531 S.E.2d 428, 438 (2000), *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 797 (2001); *State v. Lawrence*, 352 N.C. 1, 530 S.E.2d 807 (2000), *cert. denied*, 531 U.S. 1083, 148 L. Ed. 2d 684 (2001). Because defendant has presented no compelling reason for this Court to reconsider its position on this issue, we overrule this assignment of error.

[9] Defendant next argues that the trial court improperly instructed the jury during sentencing by giving pattern jury instruction 150.10. Defendant claims that this instruction inadequately limits the facially vague N.C.G.S. § 15A-2000(e)(9) aggravating circumstance that the murder was especially heinous, atrocious, or cruel. We have consistently upheld the instruction as given. *See, e.g., State v. Stroud*, 345 N.C. 106, 115-16, 478 S.E.2d 476 (1996), *cert. denied*, 522 U.S. 826, 139 L. Ed. 2d 43 (1997). "Because these jury instructions incorporate narrowing definitions adopted by this Court and expressly approved by the United States Supreme Court, or are of the tenor of the definitions approved, we reaffirm that these instructions provide constitutionally sufficient guidance to the jury." *State v. Syriani*, 333 N.C. 350, 391-92, 428 S.E.2d 118, 141, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993). Because defendant offers no compelling reason to alter or reverse our previous holdings, we overrule this assignment of error.

[10] Defendant next alleges that the trial court erred when it instructed the sentencing jury that it need not consider nonstatutory mitigators unless it found that those circumstances had mitigating value. Defendant claims that these instructions violate the Eighth and

Fourteenth Amendments to the United States Constitution. Defendant concedes that this Court has previously decided this issue against him, *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990); *State v. Fullwood*, 323 N.C. 371, 373 S.E.2d 518 (1988), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990), but contends that two later opinions by the United States Supreme Court, *Penry v. Lynaugh*, 492 U.S. 302, 106 L. Ed. 2d 256 (1989); and *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990), have invalidated our prior holdings. We disagree. Since *Penry* and *McKoy* were handed down by the United States Supreme Court, we have consistently upheld jury instructions similar to those given in this case and in *Huff* and *Fullwood. See, e.g., State v. Lynch*, 340 N.C. 435, 475, 459 S.E.2d 679 (1995), *cert. denied*, 517 U.S. 1143, 134 L. Ed. 2d 558 (1996); *State v. Robinson*, 336 N.C. 78, 117, 443 S.E.2d 306, 325 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995). Because defendant has presented no compelling reason for this Court to reconsider its position on this issue, we overrule this assignment of error.

[11] Next, defendant argues that the trial court's instruction on the capital sentencing procedure unconstitutionally made the consideration of mitigating evidence discretionary with the jury during sentencing. Specifically, defendant contends that the instructions violated the Eighth Amendment because the word "may" in the instructions on Issues Three and Four on the "Issues and Recommendation as to Punishment" form allowed each juror to ignore mitigating circumstances that the juror personally found to exist in Issue Two.

This Court has repeatedly rejected virtually identical challenges to the use of the word "may" in the instructions for the consideration of mitigating evidence in Issue Three and Issue Four. *See, e.g., State v. Geddie*, 345 N.C. at 104, 478 S.E.2d at 162; *State v. Gregory*, 340 N.C. 365, 417-19, 459 S.E.2d 638, 668-69 (1995), *cert. denied*, 517 U.S. 1108, 134 L. Ed. 2d 478 (1996). Because defendant has presented no compelling reason for this Court to reconsider its position on this issue, we overrule this assignment of error.

## PROPORTIONALITY REVIEW

[12] Having concluded that defendant's trial and capital sentencing proceeding were free from prejudicial error, we must now determine: (1) whether the record supports the aggravating circumstances found by the jury and upon which the sentences of death were based; (2)

whether the death sentences were entered under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the death sentences are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *See* N.C.G.S. § 15A-2000(d)(2) (1999).

After thoroughly reviewing the record, transcripts, and briefs in this case, we conclude that the record fully supports as to each murder the jury's finding of the aggravating circumstance that the crime was especially heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(e)(9). The jury also found as to each murder the aggravating circumstance that the murder was part of a course of conduct in which defendant engaged and which included defendant's commission of other crimes of violence against another person or persons. N.C.G.S. § 15A-2000(e)(11). After meticulous review and careful deliberation, we conclude that this aggravating circumstance submitted to and found by the jury is also fully supported by the record as to each murder. Further, we conclude that nothing in the record suggests that defendant's death sentences in this case were imposed under the influence of passion, prejudice, or any other arbitrary factor. We must now turn to our final statutory duty of proportionality review.

Proportionality review is designed to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden,* 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). In conducting proportionality review, we determine whether "the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Williams,* 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied,* 464 U.S. 865, 78 L. Ed. 2d 177 (1983); *accord* N.C.G.S. § 15A-2000(d)(2). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *Green,* 336 N.C. at 198, 443 S.E.2d at 47.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum,* 334 N.C. 208, 433 S.E.2d 144 (1993), *cert. denied,* 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). It is also proper for this Court to compare this case with the cases in which we have found the death penalty to be proportionate. *Id.* Although we review all of these cases when engaging in this statu-

tory duty, we will not undertake to discuss or cite all of those cases each time we carry out that duty. *Id.*

This Court has determined that the sentence of death was disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

However, we find the present case distinguishable from each of these seven cases. In three of those cases, *Benson*, *Stokes*, and *Jackson*, the defendant either pled guilty or was convicted by the jury solely under the theory of felony murder. Here, defendant was convicted on the theory of premeditation and deliberation. We have said that "[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

Further, multiple aggravating circumstances were found to exist in only two of the disproportionate cases. *See Young*, 312 N.C. 669, 325 S.E.2d 181; *Bondurant*, 309 N.C. 674, 309 S.E.2d 170. The present case, however, is distinguishable from both of those cases. In determining that the death penalty was disproportionate in *Young*, the Court noted that the jury failed to find the especially heinous, atrocious, or cruel aggravating circumstance, N.C.G.S. § 15A-2000(e)(9). *Young*, 312 N.C. at 691, 325 S.E.2d at 194. Here, however, the jury found the especially heinous, atrocious, or cruel aggravating circumstance. In *Bondurant*, this Court found the death penalty disproportionate because the defendant immediately exhibited remorse and concern for the victim's life. The defendant went into the hospital to secure medical help for the victim, voluntarily spoke to police, and admitted shooting the victim. *Bondurant*, 309 N.C. at 694, 309 S.E.2d at 182-83. Here, the evidence was very different. After the murder, instead of showing concern for the victims' lives, defendant attempted to hide his crime by disposing of the bodies in the woods. After defendant was arrested, he showed little remorse. When asked how he felt about killing the victims, defendant said, "It was a rush. I

had thought about it quite a while." Thus, we find no significant similarity between this case and *Young* or *Bondurant*.

An additional characteristic of this case supports the determination that imposition of the death sentence was not disproportionate. In the present case, one of the victims was a small child, less than five years old and under four feet tall, who weighed a mere fifty-one pounds.

After reviewing the cases, we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence of death disproportionate or those in which juries have consistently returned recommendations of life imprisonment. Accordingly, we cannot conclude that the defendant's death sentences are disproportionate.

Having considered and rejected all of defendant's assignments of error, and after a thorough and careful review of the record, transcripts, briefs, and oral arguments, we conclude that defendant received a fair trial and capital sentencing proceeding, free from prejudicial error. Therefore, the convictions and sentences of death entered against defendant must be and are left undisturbed.

NO ERROR.