STATE OF NORTH CAROLINA v. TIMOTHY WILEY, JR..

No. COA06-451

(Filed 3 April 2007)

**1. Evidence— guilt of another—acting in concert**

Any error in the exclusion of the guilt of another (Reggie) from a prosecution for felony murder, breaking and entering, and other crimes was harmless. Defendant's guilt was not inconsistent with Reggie's possible guilt; under the theory of acting in concert, defendant was equally guilty whether he or Reggie actually killed the victim.

**2. Homicide— felony-murder—killing during break-in**

The trial court did not err by denying defendant's motion to dismiss a murder charge where defendant was convicted under the felony murder rule. The evidence shows that defendant and

another (Reggie) had a common plan to break into a residence to rob and kill the occupant, they acted on that plan, there was no question that the victim was killed during the break-in, and the judge gave an instruction on withdrawal from a criminal enterprise which the jury did not accept.

### 3. Homicide— felony murder—underlying offense—no prejudicial error

The trial court committed harmless error in a felony murder prosecution where the jury was instructed that the underlying felony was felonious breaking or entering, which is not one of the felonies enumerated in the statute, and the court did not instruct the jury that it must find that defendant committed the crime with the use of a deadly weapon. The evidence of defendant's guilt was overwhelming and the jury would not have acquitted defendant with a correct instruction.

### 4. Jury— statements by prospective juror—no inquiry into prejudicial impact on pool—not plain error

There was no plain error in a murder prosecution where the court did not conduct an inquiry into whether the jury pool was prejudiced by the comments of a prospective juror. Defendant did not request an instruction or inquiry and the court communicated its disapproval of the juror's predisposition to find defendant guilty by excusing the potential juror for cause.

### 5. Evidence— defendant's statement—created from interview notes—admission not prejudicial error

There was ample evidence to convict defendant of first-degree felony murder, even without contested testimony from a detective about a statement created from interview notes, and there was no prejudicial error from the admission of the testimony.

Appeal by defendant from judgment entered 6 October 2000 by Judge Loto G. Caviness in Jackson County Superior Court. Heard in the Court of Appeals 8 January 2007.

*Attorney General Roy Cooper, by Special Deputy Attorney General Jill Ledford Cheek, for the State.*

*Mary Exum Schaefer for defendant appellant.*

McCULLOUGH, Judge.

Defendant appeals from a jury verdict of guilty of first-degree murder under the felony-murder rule. We determine there was no prejudicial error.

## FACTS

Timothy Wiley, Jr. ("defendant") was indicted with first-degree murder, assault with a deadly weapon with intent to kill, robbery with a dangerous weapon, felonious breaking and entering, felonious larceny, and felonious possession of stolen goods. The case was tried before a jury during the 25 September 2000 Criminal Session of Jackson County Superior Court.

The State presented evidence at trial which tended to show the following: Defendant made a statement to SBI Agent Toby Hayes ("Agent Hayes"), which Agent Hayes dictated, and was typed into a written report. Agent Hayes read the typed report into evidence. In the statement, defendant stated that he had been at the residence of a white female in Highlands, North Carolina, whom defendant knew through his sister. While there, a white male attempted to solicit defendant to rob or kill the white male's father. Defendant understood that there would be plenty of money and drugs at the white male's father's residence, which could be taken and kept in return for doing the "job." The white male wrote down some directions to his father's house and gave them to defendant. Defendant told the white male that he did not want to do the killing, but that he would find some-one to do it.

Defendant returned to Georgia and spoke with his cousin, Don Blackwell, regarding someone who could rob and/or kill the white male's father, and Blackwell put defendant in touch with Reggie Butler ("Reggie"), whom defendant had not originally known. Reggie agreed to commit the robbery and kill the father because Reggie needed the money. Defendant offered to provide Reggie with his cousin's car, for which defendant wanted to be paid $10,000. Defendant obtained some guns from a man who owed him some money, and defendant and Reggie left Atlanta, Georgia, with a .32 caliber revolver, a .22 caliber revolver, a sawed-off shotgun, and a tire iron. They stopped at a K-Mart for a roll of duct tape. Defendant drove the entire distance from Atlanta to Highlands.

When they arrived, they drove by the residence of Don Wayne Potts ("Potts"), the man they were supposed to kill or rob, looking for

vehicles that had been described to defendant. Defendant told Agent Hayes that he dropped Reggie off and parked on a pull-off nearby. Defendant stated that Reggie, carrying the .32 caliber revolver, got out and went through the woods to Potts' residence. Defendant subsequently left the car to check on Reggie, whom he found at the rear of the house, forcing entry into the house on the back lower level. Defendant first stated that he waited outside while Reggie went inside, and that after hearing gunshots fired from different caliber weapons and someone saying "he got me, he got me," he ran into the woods, where his eyeglasses fell off. When confronted with the fact that his eyeglasses were found in the kitchen of the residence, defendant admitted that he had gone inside, claiming however that when he heard shots fired, he fled.

Potts testified that on 17 March 1999 at about 6:00 p.m., he heard footsteps coming up the stairs from his basement, and a couple of minutes later he heard footsteps coming down his hallway. A black man with long hair, whom he identified as defendant, burst into his bedroom, and fired shots at him. Potts fired back, shooting himself in the foot. Potts took cover behind the gun cabinet in his bedroom. Several minutes later he left his position behind the cabinet to call 911. Potts then called a number of his friends for help, including Terry Chastain ("Chastain"). Potts told Chastain to come over and to blow the horn of his vehicle, but not to come inside. Chastain arrived, and came inside the residence. Then, Potts heard glass break and Chastain call for him. Then, he heard shots fired. The scuffle died down, and he heard Chastain say, "My god, I'm dead, I'm dead." There was another scuffle, and then silence.

A few minutes later Potts' friend Steve Potts ("Steve"), arrived. They secured the upstairs of the house. Steve wanted to go down in the basement, but Potts would not let him. He knew Chastain was shot, and wanted to wait until police arrived because he did not want anyone else to get shot.

Chastain was found in Potts' basement, having been beaten to death. Chastain also received two gunshot wounds that would not have caused death quickly, but would have contributed to blood loss. Investigation of Potts' residence revealed that it was in disarray. The trash can had been overturned, the work island had been knocked loose from the kitchen, and the banister to the stairway was broken. There was blood upstairs and on the wall leading downstairs. From the love seat in the upstairs living room, police recovered

a bullet that was matched to a .32 caliber Clerk First revolver. One of the spindles from the banister ended up in the basement near Chastain's body. Eyeglasses were found on the kitchen floor near the work island, and defendant subsequently acknowledged to Agent Hayes that they were his.

Defendant was apprehended at a payphone. He had a .22 caliber pistol in his left front pocket, and was carrying a backpack containing an unloaded sawed-off 12-gauge shotgun, duct tape, two matching cotton gloves, a magazine containing 9 millimeter rounds and three 20-gauge shotgun shells, pillowcases, and "a tire-type tool." Subsequent search of the pay phone where defendant was apprehended revealed a flashlight, a black full-face toboggan, and a green cloth glove.

Also after the killing, Reggie was apprehended. In Reggie's left front pocket was a white glove containing several .32 caliber bullets.

The defense presented no evidence.

The jury found defendant guilty of felonious breaking and entering and first-degree murder, under the felony-murder rule, with felony breaking and entering as the underlying felony. Defendant appeals.

I.

[1] Defendant contends the trial court erred by denying defendant's motion to admit several matters into evidence. We disagree.

The evidence in dispute includes testimony by Jerry Mack Brown, testimony by Captain Wallace Hill, and Reggie Butler's guilty plea. At trial, the defense sought to present the testimony of Jerry Mack Brown that while he and Reggie were in jail together, Reggie told him that he had shot Chastain and had beaten Chastain in the head with a crowbar, and that he tried to kill his accomplice because his accomplice would not go back in with him, but instead ran away. The trial court excluded the evidence. In addition, during defendant's cross-examination of Captain Wallace Hill, trial counsel asked Hill what Reggie had told him about Chastain's death and the crowbar. The State objected to the question, and the trial court sustained the State's objection. Finally, the defense sought to introduce evidence that Reggie had pled guilty to the murder, and the trial court excluded the evidence.

" 'The admissibility of evidence of the guilt of one other than the defendant is governed now by the general principle of relevancy

[stated in Rule 401.]' " *State v. Israel*, 353 N.C. 211, 217, 539 S.E.2d 633, 637 (2000) (citation omitted). "Evidence that another committed a crime is relevant and admissible as substantive evidence, so long as it points directly to the guilt of some specific person or persons *and* is inconsistent with the guilt of the defendant." *State v. Sneed*, 327 N.C. 266, 271, 393 S.E.2d 531, 533 (1990).

In the instant case, Reggie's possible guilt is not inconsistent with defendant's guilt. Under the theory of acting in concert:

> "[I]f 'two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.' "

*State v. Mann*, 355 N.C. 294, 306, 560 S.E.2d 776, 784 (citations omitted), *cert. denied*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002). " '[A] person is constructively present during the commission of a crime if he or she is close enough to be able to render assistance if needed and to encourage the actual perpetration of the crime.' " *Id.* (citation omitted).

Here, defendant admitted to SBI Agent Hayes that he solicited Reggie to do the breaking or entering and that defendant obtained a vehicle and guns for use in the crime. Defendant stated he drove Reggie from Georgia to Jackson County. The evidence shows that both Reggie and defendant were carrying guns when they got out of the car to approach Potts' house. Defendant also admitted that he entered the residence where the crime took place. In addition, it is uncontroverted that Chastain was killed during the break-in.

Because defendant is equally guilty whether he or Reggie actually killed Chastain, any error would be harmless on the ground that there is no reasonable probability that the contested evidence would have affected the jury's verdict of guilty of felony murder. Accordingly, we disagree with defendant's contention.

## II.

[2] Defendant contends the trial court erred by denying defendant's motion to dismiss the murder charge where the State failed to produce sufficient evidence that either defendant or Reggie committed the murder of Chastain. We disagree.

" 'In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator.' " *Id.* at 301, 560 S.E.2d at 781 (citation omitted). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.* "In resolving this question, the trial court must examine the evidence in the light most advantageous to the State, drawing all reasonable inferences from the evidence in favor of the State's case." *Id.*

A defendant is guilty of felony murder based on a felony not enumerated in N.C. Gen. Stat. § 14-17 if the killing was " 'committed in the perpetration . . . of any . . . felony committed . . . with the use of a deadly weapon.' " *State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000) (citation omitted). The intent required for felony murder is the intent to commit the underlying felony. *State v. Roache*, 358 N.C. 243, 311-12, 595 S.E.2d 381, 424 (2004). The elements of felonious breaking or entering are (1) the breaking or entering (2) of a building (3) with the intent to commit any felony or larceny therein (4) without the owner or occupant's consent. *State v. Williams*, 330 N.C. 579, 585, 411 S.E.2d 814, 818 (1992).

Under the theory of acting in concert, if two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is guilty as a principal if the other commits that particular crime. *State v. Barnes*, 345 N.C. 184, 233, 481 S.E.2d 44, 71, *cert. denied sub nom. Chambers v. North Carolina*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *cert. denied sub nom. Barnes v. North Carolina*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998). "[W]here a defendant and a co-defendant shared a criminal intent and the co-defendant who actually committed the crime knew of the shared intent, if the defendant was in a position to aid or encourage the co-defendant when the co-defendant committed the offense, the defendant was constructively present and acting in concert with the co-defendant." *State v. Tirado*, 358 N.C. 551, 582, 599 S.E.2d 515, 536 (2004), *cert. denied sub nom. Queen v. North Carolina*, 544 U.S. 909, 161 L. Ed. 2d 285 (2005).

After reviewing the record and transcript of the instant case, we determine there was sufficient evidence to support the verdict. For example, the evidence shows that there was a common plan between defendant and Reggie to break into Potts' residence and either kill him, rob him, and/or steal from him. Defendant admitted to obtaining guns and a vehicle and driving Reggie to Potts' residence. The evi-

dence illustrates that Reggie broke and entered Potts' residence armed with a .32 caliber revolver. Also, defendant was carrying a gun when he left the vehicle to check on Reggie. Based on our reading of the briefs, there seems to be no controversy regarding the fact that Chastain was killed during the break-in. In addition, the trial judge gave an instruction on withdrawal from the criminal enterprise which was not accepted by the jury. Therefore, we disagree with defendant's contention.

### III.

[3] Defendant contends the trial court erred in instructing the jury. Specifically, defendant contends the trial court instructed the jury on felony murder using a crime that cannot be one of the underlying felonies for felony murder, and thus, defendant is entitled to a new trial. We disagree.

"This Court reviews jury instructions 'contextually and in its entirety.'" *State v. Blizzard*, 169 N.C. App. 285, 296, 610 S.E.2d 245, 253 (2005) (citation omitted). "'The charge will be held to be sufficient if "it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . ."'" *Id.* at 296-97, 610 S.E.2d at 253 (citations omitted). "'Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.'" *Id.* at 297, 610 S.E.2d at 253 (citation omitted).

In order to support a felony-murder conviction, "the underlying felony must be either enumerated in the statute or 'committed or attempted with the use of a deadly weapon[.]'" *State v. Terry*, 337 N.C. 615, 621, 447 S.E.2d 720, 723 (1994) (citation omitted). The felony underlying defendant's felony-murder conviction, felonious breaking or entering, is not one of the enumerated felonies in the statute. Thus, the trial court should have instructed the jury that it must find that defendant committed the breaking or entering with the use of a deadly weapon. However, the United States Supreme Court has stated that "'an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence'" and that harmless-error analysis applies to these errors. *Washington v. Recuenco*, —— U.S. ——, ——, 165 L. Ed. 2d 466, 475 (2006) (quoting *Neder v. United States*, 527 U.S. 1, 9, 144 L. Ed. 2d 35, 51 (1999)).

Although it was error by the trial court not to instruct the jury that the crime must have been committed with a deadly weapon, we believe the error was harmless given the facts of this case. The evidence presented to the jury, which we have already discussed, was overwhelming. We do not believe that had the trial court instructed the jury correctly, that the jury would have acquitted defendant. Accordingly, we disagree with defendant's contention.

## IV.

[4] Defendant contends the trial court committed plain error and abused its discretion by failing to conduct an inquiry to determine if the prospective jury pool was prejudiced by the comments of a prospective juror. We disagree.

During questioning of prospective juror Sara Ledford by the State, Ledford stated that she believed defendant was guilty. Ledford also stated that she felt that defendant could not "get a fair trial with twelve white jurors." The defense did not object, and the trial court excused Ledford. Defendant asserts that he is entitled to a new trial because the trial court did not conduct an inquiry to determine whether Ledford's statement had prejudiced the jury.

Defendant is not entitled to a new trial based on this contention. First, our Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Thus, there is some question as to whether defendant's contention is even reviewable under a plain error analysis.

Second, the contention, even if reviewable, is without merit. In *State v. Gibbs*, 335 N.C. 1, 436 S.E.2d 321 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994), our Supreme Court rejected a similar argument. There, one of the defendant's potential jurors stated he felt the defendant "needs the handcuffs on," insinuating the defendant was guilty. *Id.* at 26, 436 S.E.2d at 335. The trial court excused the prospective juror. *Id.* The defendant argued that the trial court had erred by failing to give a cautionary instruction to the rest of the venire. *Id.* Rejecting the argument, our Supreme Court first pointed to the fact that the defendant had not requested any instruction, and second, stated that the court's excusal of the potential juror "repelled any inference of concurrence with his opinion." *Id.* at 28, 436 S.E.2d at 337.

**STATE v. WILEY**

[182 N.C. App. 437 (2007)]

In the instant case, defendant requested no instruction or inquiry, and the trial court's excusal of Ledford for cause similarly communicated to the jury the judge's disapproval of Ledford's predisposition to find defendant guilty. Therefore, we disagree with defendant's contention.

## V.

[5] Defendant contends the trial court committed plain error by allowing Detective Hayes to testify about a statement created from notes taken during Hayes' interview of defendant. We disagree.

Plain error is defined as a " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done . . . .' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted). " 'To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result.' " *State v. Teate*, 180 N.C. App. 601, 610, 638 S.E.2d 29, 35 (2006) (citation omitted).

Here, defendant has not shown the jury would have probably reached a different result if Detective Hayes was not allowed to testify regarding the statement. After reviewing the record and transcript, we believe there was ample evidence to convict defendant even if the contested evidence was not admitted. Further, Detective Hayes was questioned extensively on cross-examination about his interview of defendant. Also, we determine there is no merit in defendant's argument that the statement was embellished, or in some way perjured. Accordingly, we disagree with defendant's contention.

No prejudicial error.

Chief Judge MARTIN and Judge LEVINSON concur.