STATE v. POPE

[163 N.C. App. 486 (2004)]

———

STATE OF NORTH CAROLINA v. LORENZO LEE POPE and DEMETRI MONTE BELL

No. COA03-557

(Filed 6 April 2004)

**1. Homicide— first-degree murder—instructions on elements—lapsus linguae**

The trial court did not commit structural or plain error by its jury instruction on the elements of first-degree murder when it stated that "it would be good" of the jury to return a verdict of not guilty if it had reasonable doubt, because: (1) although the trial court's statement was erroneous, it was merely a lapsus linguae and was immediately corrected twice when the trial court

STATE v. POPE

[163 N.C. App. 486 (2004)]

charged the jury in final mandates as to each defendant that if the jury did not find or had a reasonable doubt as to the existence of any element, it was the jury's duty to return a verdict of not guilty; and (2) in viewing the jury instructions as a whole, the jury could not have been misled in this case and the misstatement had no probable impact on the outcome of the trial.

**2. Homicide— first-degree murder—short-form indictment— constitutionality**

A short-form indictment used to charge a defendant with first-degree murder is constitutional.

**3. Criminal Law— instructions—recess**

The trial court did not err in a first-degree murder case by its instructions at recess, because: (1) defendant waived this issue by failing to object to the instructions given, failed to request additional instructions and also failed to contend plain error in his assignment of error; and (2) even if the issue had been pre-served, the trial court gave instructions on two occasions which complied with the requirements of N.C.G.S. § 15A-1236 and reminded the jury of those instructions on other occasions.

**4. Homicide— first-degree murder—instructions on lesser-included offense—second-degree murder**

The trial court did not err by denying defendant's request to instruct the jury on second-degree murder as a lesser-included offense of first-degree murder, because: (1) the evidence over-whelmingly supports a finding of premeditation and deliberation, and thus, there is no evidence to support a finding of a lesser offense which does not include those elements; and (2) whether defendant believed the victim to be dead after the shooting is not evidence as to whether he intended to kill the victim before the shooting, and even if he believed the victim had not been killed, defendant made no effort to seek medical assistance which fur-ther suggested that defendant intended to kill the victim.

**5. Homicide— first-degree murder—instructions—acting in concert**

The trial court did not err in a first-degree murder case by instructing the jury on the doctrine of acting in concert, because the evidence revealed that defendants were acting together in pursuit of a common purpose to kill the victim including that: (1) defendants left another man's car together just before the shots

were fired, pulling up their hoods as they walked away, and they returned to the car together just after the shooting; and (2) both defendants bore ill-will toward the victim, both had weapons, and both fired their weapons.

### 6. Jurors— inquiry—possible exposure to pretrial publicity

The trial court did not abuse its discretion in a first-degree murder case by its handling of defendants' request that the trial court inquire of the jurors regarding their possible exposure to a newspaper article concerning the trial, because: (1) the court inquired of the jurors as to whether any of them had contact with the news article and whether all had followed the instruction the trial court gave at the beginning of the trial; and (2) on the last day of trial, the court again inquired as to whether any juror had an occasion to violate the rule and read the paper the prior night.

Appeal by defendants from judgments entered 16 August 2002 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 4 February 2004.

*Attorney General Roy Cooper, by Assistant Attorneys General David J. Adinolfi, II and H. Dean Bowman, for the State.*

*Nora Henry Hargrove, for defendant-appellant Pope and Richard E. Jester for defendant-appellant Bell.*

MARTIN, Chief Judge.

Defendants Lorenzo Lee Pope ("Pope") and Demetri Monte Bell ("Bell") were indicted for the first-degree murder of Jimmy Battle. A jury convicted both defendants of first-degree murder based on malice, premeditation, and deliberation. The trial court entered judgment in accordance with the verdict and sentenced both defendants to life imprisonment without parole. Defendants appeal. After careful review, we conclude defendants received a fair trial, free of prejudicial error.

The State's evidence at trial tended to show that on the evening of 25 November 2000, defendants were at defendant Bell's mother's house in Rocky Mount with Milton Latrell Freeman and Kelly Davis. The four men left together, with Freeman driving, traveling to "Little Raleigh" in south Rocky Mount to see some girls. As they were traveling, they passed a red car parked on the side of the road, apparently

having some kind of mechanical trouble. Either Pope or Bell stated "there goes that guy right there." Bell instructed Freeman to park the car, and Freeman did so approximately two blocks from where the red car was located. Bell and Pope got out of the car and Freeman saw them pull on their hoods as they walked away. Several minutes later, Freeman and Davis heard a number of gunshots. Bell and Pope came back to the car and told Freeman to drive away; both men had pistols. Davis testified that Pope had a black .45 caliber pistol and that the magazine was empty; Bell had a silver and black nine millimeter pistol. Pope stated "I think he's dead," to which Bell responded, "No, I don't think he's dead." The group drove to Bell's aunt's house, then to Davis' girlfriend's house, where they hid the pistols in a closet. Afterwards, they smoked some marijuana, went to a club in Scotland Neck, and spent the night in a motel in Roanoke Rapids.

There was also evidence tending to show that Bell had a previous disagreement with Jimmy Battle and had told Milton Freeman the day before the shooting that he had a "beef" with Battle. On 25 November 2000, Battle had car trouble near Wiley Neal's house in the "Little Raleigh" area of Rocky Mount. Battle asked Jessie Smith to help him try and start the car. While Smith was working underneath the hood of the car, he heard a number of shots; he saw two men running away and saw Jimmy Battle lying on the ground. Neal also heard the shots and when he looked out, he saw Battle on the ground. When police arrived, Battle was not breathing and had no pulse. Police found ten shell casings, both nine millimeter and .45 caliber, on the ground near Battle's body. A forensic pathologist testified that Battle had suffered two separate bullet wounds and that death had resulted from a wound to the chest which had severed his aorta. An SBI weapons expert testified that four .45 caliber shell casings found at the scene had been fired by Pope's pistol and that six nine millimeter shell casings found at the scene had been fired from Bell's pistol.

Neither defendant offered evidence.

********************

## Defendant Pope's Appeal

Defendant Pope brings forward only three of his twelve assignments of error contained in the record on appeal. The nine assignments of error not addressed in his brief are deemed abandoned. *See* N.C.R. App. P. 28(a), 28(b)(6).

**[1]** In his first argument, Pope asserts he is entitled to a new trial due to an error in the jury instructions. When instructing the jury on the elements of first degree murder, the trial judge stated:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally killed the victim with a deadly weapon thereby proximately causing the victim's death, and that the defendant acted with malice, with premeditation, and with deliberation, it would be your duty to return a verdict of guilty of first degree murder. If you do not so find or have a reasonable doubt as to one or more of these things, *it would be good for you* to return a verdict of not guilty.

(Emphasis added). Though no objection was made, and the misstatement was not otherwise brought to the court's attention at trial, defendant Pope argues the instruction constitutes both structural error and plain error, entitling him to a new trial.

Structural error is rarely found to exist and consists of "a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *State v. Anderson*, 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L. Ed. 2d 302, 331 (1991)). The trial court's misstatement in this case was not of such a nature as to constitute structural error. *See, e.g., Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L. Ed. 2d 182 (1993) (erroneous instruction to jury on reasonable doubt); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L. Ed. 2d 598 (1986) (unlawful exclusion of jurors of defendant's race); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L. Ed. 2d 31 (1984) (deprivation of right to public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L. Ed. 2d 122 (1984) (deprivation of right to self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed. 2d 799 (1963) (total deprivation of the right to counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (absence of impartial trial judge).

Plain error entitles a defendant to a new trial "only if the error was so fundamental that, absent the error, the jury probably would have reached a different result." *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002). Defendant Pope argues that conflicting instructions upon a material point entitles him to a new trial. It is true that "[a]n erroneous instruction upon a material aspect of the case is not cured by the fact that in other portions of the charge the law is cor-

rectly stated." *State v. Ellerbe,* 223 N.C. 770, 775, 28 S.E.2d 519, 522 (1944). However, where "the inadvertence complained of occurs early in the charge but is not called to the attention of the court at the time, and is later corrected, the occurrence will not be held for prejudicial error when it is apparent from the record that the jury could not have been misled." *State v. Wells,* 290 N.C. 485, 498, 226 S.E.2d 325, 334 (1976), *superseded in part on other grounds by statute,* N.C. Gen. Stat. § 15A-924(a)(5) (2003).

In the present case, the trial court's misstatement, though erroneous, was merely a *lapsus linguae* and was immediately corrected, twice, when the trial court charged the jury in final mandates as to each defendant that if the jury did not find, or had a reasonable doubt as to the existence of, each element it was their "duty to return a verdict of not guilty." In viewing the jury instructions as a whole, the jury could not have been misled in this case and, therefore, the misstatement had no probable impact on the outcome of the trial. *See State v. Silhan,* 302 N.C. 223, 275 S.E.2d 450 (1981), *overruled on other grounds, State v. Sanderson,* 346 N.C. 669, 488 S.E.2d 133 (1997). Thus, defendant has not shown plain error. *See State v. Odom,* 307 N.C. 655, 661-62, 300 S.E.2d 375, 378-79 (1983).

[2] Though defendant Pope assigns error to the use of the "short form" indictment to charge him with first-degree murder, he concedes the short form indictment has been repeatedly upheld by the North Carolina Supreme Court. *See State v. Hunt,* 357 N.C. 257, 582 S.E.2d 593, *cert. denied,* 124 S.Ct. 44, 156 L. Ed. 2d 702 (2003). This assignment of error is overruled.

[3] By the final assignment of error argued in his brief, defendant Pope contends the trial court gave insufficient instructions to the jury at recess. Defendant cites four instances where he claims the court failed to appropriately instruct the jury as to its conduct during recess. However, defendant did not object to the instructions given by the trial court, nor did he request additional instructions. He has also failed, in his assignment of error, to contend plain error with respect to the instructions as required by N.C.R. App. P. 10(c)(4). Therefore, he has waived review. *State v. Moore,* 132 N.C. App. 197, 511 S.E.2d 22, *appeal dismissed,* 350 N.C. 103, 525 S.E.2d 469 (1999), *and denial of habeas corpus aff'd sub nom. Moore v. Brown,* 215 F.3d 1320 (4th Cir. 2000). However, even if the issue had been preserved, defendant's contention would have no merit. The trial court gave instructions on two occasions which complied with the requirements of N.C. Gen.

Stat. § 15A-1236 (2003), and reminded the jury of those instructions on other occasions. We hold the instructions to have been adequate and overrule defendant's assignment of error to the contrary. *See State v. Larrimore*, 340 N.C. 119, 142, 456 S.E.2d 789, 801 (1995).

## Defendant Bell's Appeal

Defendant Bell brings forward in his brief four of the eight assignments of error contained in the record on appeal. His remaining assignments of error are deemed abandoned. *See* N.C.R. App. P. 28(a), 28(b)(6).

**[4]** Defendant Bell first assigns error to the trial court's denial of his request to instruct the jury on second-degree murder as a lesser-included offense of first-degree murder. First-degree murder is the "unlawful killing of another human being with malice and with premeditation and deliberation." *State v. Watson*, 338 N.C. 168, 176, 449 S.E.2d 694, 699 (1994), *cert. denied*, 514 U.S. 1071, 115 S.Ct. 1708, 131 L. Ed. 2d 569 (1995). "Murder in the second degree is the unlawful killing of another human being with malice but without premeditation and deliberation." *Id.* In a first-degree murder case, if "there is any evidence or if any inference can be fairly deduced therefrom, tending to show one of the lower grades of murder, it is then the duty of the trial judge, under appropriate instructions, to submit that view to the jury." *State v. Strickland*, 307 N.C. 274, 285, 298 S.E.2d 645, 653 (1983) (citation omitted), *overruled on other grounds*, *State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986).

> "Premeditation" means that the defendant formed the specific intent to kill the victim some period of time, however short, before the actual killing. "Deliberation" means an intent to kill executed by the defendant in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.

*State v. Bonney*, 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991) (citation omitted). Circumstances to be considered in determining whether a killing was done with premeditation and deliberation include: (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing

of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner. *See State v. Jackson*, 317 N.C. 1, 23, 343 S.E.2d 814, 827 (1986), *vacated on other grounds*, 479 U.S. 1077, 107 S.Ct. 1271, 94 L. Ed. 2d 133 (1987); *State v. Brown*, 315 N.C. 40, 59, 337 S.E.2d 808, 823 (1985), *cert. denied*, 476 U.S. 1165, 106 S.Ct. 2293, 90 L. Ed. 2d 733 (1986), *overruled on other grounds, State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988).

In the present case, the evidence overwhelmingly supports a finding of premeditation and deliberation; thus, there is no evidence to support a finding of a lesser offense which does not include those elements and the trial court did not err in refusing to submit second-degree murder as a lesser included offense. *State v. Strickland* at 291, 298 S.E.2d at 657. There was no evidence that Battle provoked either defendant; he was merely working on his car on the side of the road when defendants walked up and started shooting. There was also evidence that Bell had ill-will toward Battle prior to the incident. When Battle was seen by defendants, they calmly instructed Freeman to park the car and to wait for them. They were seen pulling up the hoods on their jackets as they walked away from Freeman's car. Upon returning to the car, defendants discussed whether they had killed Battle and undertook to hide their weapons. After they had hidden their weapons, they smoked marijuana and went to a club. There was no evidence that Bell's demeanor was anything but calm. Additionally, ten shell casings were found, six of which had been fired by Bell's pistol, suggesting that potentially lethal shots were fired after Battle had been struck and rendered helpless and that the killing was done in a brutal manner.

Bell argues his intent to kill Battle was negated by evidence tending to show that when he returned to the car after the shooting, he stated that he did not believe the victim to be dead. This argument does not flow from his statement; whether Bell believed the victim to be dead after the shooting is not evidence as to whether he intended to kill the victim before the shooting. Moreover, even if Bell believed that Battle had not been killed, he made no effort to seek medical assistance, further suggesting that he intended that Battle be killed.

In sum, the evidence presented supports a finding of premeditation and deliberation and does not support an instruction for a lesser degree of murder. This assignment of error is overruled.

**[5]** Defendant Bell next argues the trial court erred by instructing the jury as to the doctrine of acting in concert. Pursuant to the doctrine of acting in concert

> [I]f two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.

*State v. Barnes*, 345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997), *cert. denied*, 523 U.S. 1024, 118 S.Ct. 1309, 140 L. Ed. 2d 473 (1998) (citations omitted).

Defendant Bell argues the evidence of his statement questioning whether Battle had been killed shows that he was not acting together with defendant Pope with a specific intent to kill Battle, and that Pope acted independently. We disagree. The evidence shows the defendants left Freeman's car together just before the shots were fired, pulling up their hoods as they walked away, and they returned to the car together just after the shooting. Both Bell and Pope bore ill-will toward Battle, both had weapons, and both fired their weapons. Such evidence does not suggest independent acts by defendants; rather, it shows they were acting together in pursuit of a common purpose to kill Battle. This assignment of error is overruled.

**[6]** By his final two assignments of error, defendant Bell contends the trial court erred in its handling of defendants' request that the court inquire of the jurors regarding their possible exposure to a newspaper article concerning the trial. In responding to the request, the trial court inquired of defense counsel as to whether either of them had information of juror misconduct or that any juror had read the article. Both counsel responded that they had no such information. The trial court then inquired of the jurors, as a body, as to whether any of them had seen a news article concerning the trial. No juror responded. Defendant Bell argues that the manner in which the trial court inquired of the jurors discouraged any juror from admitting that he or she had viewed the article.

The manner in which a trial court conducts an inquiry into whether a juror has been exposed to publicity or other external influences is reviewed for an abuse of discretion. *See State v. Denny*, 294 N.C. 294, 299, 240 S.E.2d 437, 440, (1978); *State v. McVay*, 279 N.C. 428, 432-33, 183 S.E.2d 652, 655 (1971). Our review of the procedure

used by the trial court here discloses no abuse of discretion. The court simply inquired of the jurors as whether any of them had contact with the news article and whether all had followed the instruction he had given at the beginning of the trial. On the last day of the trial, the court again inquired as to whether any juror "had an occasion to violate my rule and read the paper last night?" The trial court's inquiries were entirely appropriate and the assignments of error to the contrary are overruled.

Defendants received a fair trial, free of prejudicial error.

No Error.

Judges STEELMAN and GEER concur.