TYSON, Judge.
 

 *150
 
 Phillip Voltz, IV ("Defendant") appeals from judgments entered after a jury found him guilty of assault inflicting serious injury, second-degree sexual offense, assault by strangulation, felonious breaking or entering, and intimidating a witness. We affirm in part, and find no plain error in part.
 

 I. Background
 

 Jessica Tony ("Tony") invited Defendant to the apartment she shared with B.A. and B.A.'s two-year-old daughter on the evening of 12 May 2015. Defendant brought a six-pack of beer with him. Tony, Defendant, and B.A. sat on the porch drinking and talking. Defendant and B.A. had not met prior to that evening. At around 12:30 a.m., B.A.'s daughter
 
 *762
 
 woke up and began to cry. Tony left to check on the child, and eventually fell asleep with her. When B.A. found Tony asleep, she told Defendant he needed to leave. Defendant responded he could not leave because he did not want to drive drunk, so B.A. told him he could sleep on the couch. B.A. retired to her bedroom.
 

 As B.A. was preparing for bed, Defendant entered B.A.'s bedroom and informed her "that [they] were going to have sex." B.A. "told [Defendant] no," and Defendant pushed B.A. onto the bed, got on top of her, and choked her for a few seconds. Defendant forced B.A. to put her hands over her head, pulled off her shirt, ripped off her bra, and inserted his fingers into her vagina while choking her with one hand.
 

 During a struggle, B.A. managed to fight off Defendant. B.A. then stood up on the bed, swung her right hand and hit Defendant in the eye, causing him to fall backwards. Defendant exclaimed "[l]ook what you did to my face," pulled B.A. down from the bed, threw her against the wall, and began to choke her again. B.A. was able to reach the bedroom door, open it, and push Defendant off of her. Defendant again grabbed B.A., and the pair fell to the floor in the doorway of the bedroom. The
 
 *151
 
 struggle continued into the hallway, during which Defendant picked B.A. up by her legs and slammed her to the floor three times.
 

 Hearing the commotion, Tony came out of her bedroom, screamed, and asked what was going on. Tony testified that B.A. "kept yelling that [Defendant] raped her[.]" B.A. testified she told Tony to call the police. B.A. eventually managed to get away from Defendant.
 

 As B.A. explained at trial,
 

 I ran into the bar area of my kitchen and grabbed the hammer and told [Defendant] that he needed to get out, and so I followed at a safe distance behind him as he went out the door and then he turned around and grabbed the hammer away from me and slashed it at my arm and told me that he would see me again.
 

 The police responded to the scene, but Defendant had left before they arrived. Defendant was indicted on 15 June 2015 on charges of assault inflicting serious injury, second-degree sexual offense, and assault by strangulation (collectively, the "13 May 2015 charges").
 

 About eight months later, Kerissa Eller ("Eller"), B.A.'s neighbor, was washing dishes in her kitchen on 2 January 2016 when a man wielding a knife broke into her home. The man repeatedly asked "[w]here the f--k is [B.A.'s first name]?" Eller assumed the man meant B.A. Eller testified that after the man repeated the question a few times, he stopped, looked around, exclaimed "[o]h s--t," and ran out. Eller called the police. The police showed Eller a photographic lineup, which included a photo of Defendant, but Eller was unable to identify anyone in the lineup. Defendant was indicted on 7 March 2016 on charges of felony breaking or entering, felony stalking, and intimidating a witness (collectively, the "2 January 2016 charges").
 

 Prior to trial, the State moved to join the 13 May 2015 and the 2 January 2016 charges for a single trial. Defense counsel objected to the motion. After considering arguments by Defendant and the State, the trial court ruled, "after hearing all the arguments and reviewing the case law," joinder "[was] proper in this matter[.]"
 

 Defendant's trial began on 29 August 2016. During Eller's testimony, the trial court conducted
 
 voir dire
 
 to determine whether to admit portions of her testimony regarding B.A.'s character. In her
 
 voir dire
 
 testimony, Eller described B.A. as someone who created drama by, for example, "not keeping up with her dog." Eller further testified B.A. "always [had] ... eight or nine cars in and out of [the apartment
 
 *152
 
 complex] all day." Also during
 
 voir dire
 
 , the following colloquy occurred between Defendant's counsel and Eller:
 

 [Defendant's counsel:] And what kind of people do you see always going in and out of [B.A.'s] house?
 

 [Eller:] I don't really know how to describe it. It's just lots of cars, lots of black men mostly. And there is a couple white girls that come in and out a lot but they're always arguing with the people they're with too, so I just try to stay to myself.
 

 *763
 
 [Defendant's counsel:] So is it fair to say you see [B.A.] arguing a lot with the variety of people?
 

 [Eller:] Yes.
 

 Eller further testified during
 
 voir dire
 
 that she had observed B.A. arguing with men in the yard outside of the apartment complex, and she could occasionally hear B.A. loudly arguing with men inside of B.A.'s apartment, which was a considerable distance away. Following
 
 voir dire
 
 , the trial court ruled that Eller's testimony would be limited to describing statements B.A. made to Eller about the events surrounding the alleged attack, but Eller was not permitted to testify about B.A.'s "propensity for violence" or about the "people coming in and out."
 

 After all of the evidence was presented, the trial court instructed the jury regarding each of the charged offenses. With respect to the charge of felonious breaking or entering, the trial court gave the following oral instruction in open court:
 

 [Defendant] has been charged with felonious breaking or entering into another's building without her consent with the intent to commit a felony. For you to find the defendant guilty of this offense the State must prove four things beyond a reasonable doubt.
 

 First, that there was either a breaking or an entry by [Defendant]. Coming into the apartment of [Eller], ... with a knife would be a breaking or entering.
 

 Second, the State must prove that it was a building that was broken into or entered.
 

 Third, that the tenant did not consent to the breaking or entering.
 

 *153
 
 And forth, that at the time of the breaking or entering the defendant intended to commit
 
 the felony of assault
 
 .
 

 (emphasis added). The trial court further instructed the jury if it found "from the evidence beyond a reasonable doubt that on or about the alleged date [Defendant] broke into or entered a building without the consent of the tenant, intending at that time to commit
 
 a felony of assault
 
 ," it would be the jury's duty "to return a verdict of guilty of felonious breaking or entering."
 

 After the trial court had fully instructed the jury as to all offenses, the jury began deliberations. The next morning, and outside the presence of the jury, the trial judge stated that he "want[ed] to mention something ... that [he] added" to the jury instruction on felonious breaking or entering. With regard to the fourth element of felonious breaking or entering, the trial court judge explained:
 

 At the time of the breaking or entering [Defendant] intended to commit the felony of felonious assault. That was what I read to [the jury]. The footnote after that [in the pattern jury instructions] says that the crime-the crime that [Defendant] allegedly intended to commit should be briefly defined. Failure to define the crime may constitute reversal [sic] error.
 

 The trial judge stated it was his intention to provide the jury with alternate jury instructions that defined felony assault. Both the State and Defendant's counsel reviewed the proposed alternate instructions, and each agreed to them.
 

 When the jury was present in the courtroom, the trial judge told the jury the following:
 

 I've prepared for you sort of at your request a copy of everything that I read to you-all yesterday.... [I]t's the whole charge from the beginning to end.... [Y]ou said you wanted the law yesterday afternoon, and I read it to you, but overnight I had time to fix the whole thing that I read to you from beginning to end. So I'm going to give you a copy of what's called the judge's charge, just one copy.
 
 But it's everything I read to you from beginning to end, okay?
 
 ... I'm exercising the [c]ourt's discretion to give you a written copy of the charge, the oral charge, that I read to you yesterday afternoon, okay? So you'll have a written copy of that with you in the jury room.
 

 *154
 
 (emphasis supplied). The written copy of the jury instructions given to the jury was identical to the oral instructions given the previous day, quoted above, but replaced the fourth element of the charge of breaking or entering with the following:
 

 *764
 
 And Fourth, that at the time of breaking or entering, [Defendant] intended to commit the felony of felonious assault. A felony assault would be Assault with a Deadly Weapon with Intent to Kill, Inflicting Serious Bodily Injury. Or an attempt to commit Assault with a Deadly Weapon with Intent to Kill, Inflicting Serious Bodily Injury.
 

 (emphasis omitted). The jury then resumed deliberations.
 

 Defendant was convicted of assault inflicting serious injury, second-degree sexual offense, assault by strangulation, felonious breaking or entering, and intimidating a witness, but was acquitted on the charge of felonious stalking. Defendant appeals.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2015) and N.C. Gen. Stat. § 15A-1444(a) (2015).
 

 III. Issues
 

 Defendant argues the trial court erred by: (1) granting the State's motion for joinder of the two separate sets of charges; and (2) providing the jury with written jury instructions on the charge of felonious breaking or entering that materially differed from the trial court's earlier oral instructions.
 

 IV. Joinder of Offenses
 

 Defendant argues the trial court erred by allowing joinder of the 15 May 2015 and 2 January 2016 charges. "Whether joinder of offenses is permissible under [ N.C. Gen. Stat. § 15A-926(a) ] is a question addressed to the discretion of the trial court which will only be disturbed if the defendant demonstrates that joinder deprived him of a fair trial."
 
 State v. Wilson
 
 ,
 
 108 N.C.App. 575
 
 , 582,
 
 424 S.E.2d 454
 
 , 458 (1993).
 

 Defendant argues that portions of Eller's
 
 voir dire
 
 testimony at trial was inadmissible character evidence as to the 13 May 2015 charges, but was essential testimony for the 2 January 2016 charges. Defendant asserts, had Eller's testimony regarding B.A.'s arguments with "lots of black men" been admitted, that testimony would have raised doubt whether Defendant was the perpetrator of the crimes of breaking or entering and intimidating a witness.
 

 *155
 
 Defendant argues the identity of the person who broke into Eller's apartment was at issue because Eller was not able to identify Defendant's photo in a lineup, and that "it was likely any number of other black men with whom B.A. had a volatile relationship with" could have mistakenly broken into Eller's apartment looking for B.A. Because the trial court did not allow the admission of this testimony, Defendant argues, he was denied the opportunity to create reasonable doubt in the jurors' minds and, therefore, the trial court erred in joining the two sets of charges for trial.
 
 See
 

 State v. Huff
 
 ,
 
 325 N.C. 1
 
 , 23,
 
 381 S.E.2d 635
 
 , 647 (1989) ("If consolidation hinders or deprives the accused of his ability to present his defense, the charges should not be consolidated." (citations omitted)),
 
 vacated on other grounds
 
 ,
 
 497 U.S. 1021
 
 ,
 
 110 S.Ct. 3266
 
 ,
 
 111 L.Ed. 2d 777
 
 (1990).
 

 Eller's
 
 voir dire
 
 testimony was not relevant to the 2 January 2016 charges and would have been inadmissible to suggest that another person committed them. "[W]here the evidence is proffered to show that someone other than the defendant committed the crime charged, admission of the evidence must do more than create mere conjecture of another's guilt in order to be relevant."
 
 State v. May
 
 ,
 
 354 N.C. 172
 
 , 176,
 
 552 S.E.2d 151
 
 , 154 (2001) (citation omitted). "Such evidence must (1) point directly to the guilt of some specific person, and (2) be inconsistent with the defendant's guilt."
 

 Id.
 

 (citation omitted). Evidence that tends to show "nothing more than that someone other than the accused had an opportunity to commit the offense, without tending to show that such person actually did commit the offense and that therefore the defendant did not do so, is too remote to be relevant and should be excluded."
 
 State v. Brewer
 
 ,
 
 325 N.C. 550
 
 , 564,
 
 386 S.E.2d 569
 
 , 576 (1989) (citation omitted).
 

 In the present case, Eller's
 
 voir dire
 
 testimony, that B.A. had "lots of black men" as visitors to her apartment, and she had frequent disagreements with those visitors, fails to point to any specific person, who may have committed the 2 January 2016 offenses. Rather, Eller's testimony would be sheer
 
 *765
 
 speculation of the identity of another pool of suspects with whom she had disagreements, and this testimony does not show that any person other than Defendant "actually did commit the offense and that therefore [Defendant] did not do so[.]"
 
 Id
 
 .
 

 Further, Eller's testimony was not inconsistent with Defendant's guilt, as required to be admissible under our Supreme Court's decision in
 
 May
 
 . Whomever B.A. chose to have as visitors to her apartment, and the volatility, if any, of her relationship with those visitors is not connected to the State's theory that Defendant mistakenly broke into Eller's home brandishing a deadly weapon while looking for B.A. Eller's testimony was not inconsistent with Defendant's guilt and "too remote to be
 
 *156
 
 relevant."
 
 Id
 
 . The trial court did not err in excluding Eller's testimony concerning the 2 January 2016 charges. Defendant has failed to show error in joining the 15 May 2015 and 2 January 2016 charges on that basis. Defendant's arguments are overruled.
 

 V. Jury Instructions
 

 Defendant argues the trial court erred by providing the jury with written jury instructions on the charge of felonious breaking or entering, which conflicted and materially differed from the trial court's earlier oral instructions. Defendant further argues the trial court plainly erred by failing to define "the felony of assault." We disagree.
 

 A. General Standard of Review for Jury Instructions
 

 "Whether a jury instruction correctly explains the law is a question of law, reviewable by this Court
 
 de novo
 
 ."
 
 State v. Barron
 
 ,
 
 202 N.C.App. 686
 
 , 694,
 
 690 S.E.2d 22
 
 , 29 (2010) (citation omitted). "This Court reviews jury instructions contextually and in its entirety. The charge will be held sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.]"
 
 State v. McGee
 
 ,
 
 234 N.C.App. 285
 
 , 287,
 
 758 S.E.2d 661
 
 , 663 (2014) (citation omitted).
 

 Generally, "an error in jury instructions is prejudicial and requires a new trial
 
 only if
 
 there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."
 
 State v. Castaneda
 
 ,
 
 196 N.C.App. 109
 
 , 116,
 
 674 S.E.2d 707
 
 , 712 (2009) (emphasis supplied) (citations and internal quotation marks omitted).
 

 B. Conflicting Instructions upon a Material Point
 

 Our courts have recognized the principle in criminal and civil cases, "that when there are conflicting instructions upon a material point, there must be a new trial since the jury is not supposed to be able to distinguish between a correct and incorrect charge."
 
 State v. Carver
 
 ,
 
 286 N.C. 179
 
 , 183,
 
 209 S.E.2d 785
 
 , 788 (1974) ;
 
 see
 

 State v. Pope
 
 ,
 
 163 N.C.App. 486
 
 , 490-91,
 
 593 S.E.2d 813
 
 , 817 (2004) ("It is true that [a]n erroneous instruction upon a material aspect of the case is not cured by the fact that in other portions of the charge the law is correctly stated." (citations and internal quotation marks omitted));
 
 Jones v. Morris
 
 ,
 
 42 N.C.App. 10
 
 , 13,
 
 255 S.E.2d 619
 
 , 621 (1979). In order to demonstrate prejudice, the appealing party must show both that the instructions conflicted and varied on a material point(s).
 
 See, e.g.
 
 ,
 
 Jones
 
 ,
 
 42 N.C.App. at 13
 
 ,
 
 255 S.E.2d at 621
 
 .
 

 *157
 
 This principal
 
 only
 
 applies where the instructions are
 
 conflicting
 
 and the conflict impacts material points.
 
 State v. Stevenson
 
 ,
 
 327 N.C. 259
 
 , 265,
 
 393 S.E.2d 527
 
 , 530 (1990). Where the instructions are "not internally contradictory, but [were], at most, incomplete at one important point," the instructions are not conflicting such that a new trial is automatically required.
 
 Id
 
 . at 266,
 
 393 S.E.2d at 530
 
 (holding instructions were not conflicting where the court initially properly instructed on the elements of first-degree murder, but later omitted an element in the final mandate).
 

 Our Supreme Court has held no conflicting instructions occurred where "the complaint [was] not of two inconsistent statements of the law," and any "confusion, assuming it to exist, was completely clarified in the other portions of the charge."
 
 State v. Schultz
 
 ,
 
 294 N.C. 281
 
 , 284-85,
 
 240 S.E.2d 451
 
 , 454 (1978) ;
 
 see also
 

 *766
 

 State v. Roseboro
 
 ,
 
 344 N.C. 364
 
 , 378,
 
 474 S.E.2d 314
 
 , 321-322 (1996) (holding the omission of an element of larceny in the body of the jury charge "did not create internally contradictory instructions," because the final jury mandate included all elements of larceny).
 

 Here, the trial court's initial oral instructions to the jury on the charge of felonious breaking and entering stated, in part, "that at the time of the breaking or entering the defendant intended to commit the felony of assault." After deliberations commenced, the jury foreman submitted a question to the trial court requesting "copies of the laws[,] what the judge read," and specifically asked for clarification on what constitutes a second degree sexual offense and serious injury. That evening the trial court orally re-instructed the jury on the second degree sex offense and serious injury. The trial court further indicated, based upon the jury's request, he was inclined to give a copy of the entire charge to the jury the next morning.
 

 The next morning, outside the presence of the jury, the trial judge noted to counsel that he wanted to add to the definition of "the felony of assault" in the felonious breaking and entering instruction in the written instructions to be given to the jury. The trial judge gave each attorney a copy of the suggested additional language. Each attorney expressly agreed to the additional instructions and stated no objection.
 

 The written copy of the jury instructions as delivered stated, in part:
 

 And Fourth, that at the time of breaking or entering, [Defendant] intended to commit the felony of felonious assault. A felony assault would be Assault with a Deadly Weapon with Intent to Kill, Inflicting Serious Bodily Injury.
 

 *158
 
 Or an attempt to commit Assault with a Deadly Weapon with Intent to Kill, Inflicting Serious Bodily Injury. (emphasis omitted).
 

 Defendant contends the trial court's oral and written instructions contain conflicting language to warrant a new trial. We disagree. The instructions were "not internally contradictory, but [were], at most incomplete at one important point."
 
 Stevenson
 
 ,
 
 327 N.C. at 266
 
 ,
 
 393 S.E.2d at
 
 530 ;
 
 Roseboro
 
 ,
 
 344 N.C. at 378
 
 ,
 
 474 S.E.2d at 321-322
 
 . Recognizing the oral instruction
 
 may
 
 have been insufficient, the trial court provided the additional language contained in the written instructions, simply to further define "the felony of assault," to clarify the fourth element of felony breaking and entering.
 

 The trial court may clarify its instructions where and after the trial court recognizes the original instructions may have been confusing, or where the jury requests clarifying or additional instructions on a charge.
 
 See
 

 State v. Harris
 
 ,
 
 315 N.C. 556
 
 , 563,
 
 340 S.E.2d 383
 
 , 388 (1986) ;
 
 State v. Rogers
 
 ,
 
 299 N.C. 597
 
 , 603-05,
 
 264 S.E.2d 89
 
 , 93-94 (1980).
 

 Defendant cannot materially distinguish the cases cited by the State, which allow the trial court to clarify the oral instructions either upon the request of counsel, the jury, or upon the trial court's own realization of potential error.
 
 Harris
 
 ,
 
 315 N.C. at 563
 
 ,
 
 340 S.E.2d at
 
 388 ;
 
 Rogers
 
 ,
 
 299 N.C. at 603-05
 
 ,
 
 264 S.E.2d at 93-94
 
 .
 

 Defendant asserts the trial court did not explicitly mention the change in the felonious breaking and entering instruction to the jury. This argument ignores the fact that "[o]ur system of trial by jury is 'based upon the assumption that the trial jurors are men [and women] of character and of sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so.' "
 
 State v. King
 
 ,
 
 343 N.C. 29
 
 , 45,
 
 468 S.E.2d 232
 
 , 242 (1996) (quoting
 
 State v. Ray
 
 ,
 
 212 N.C. 725
 
 , 729,
 
 194 S.E. 482
 
 , 484 (1938) ).
 

 The jury requested a written copy of instructions and clarification upon certain points of law. The trial court recognized a need to clarify the instructions of the felonious breaking and entering charge. The attorneys for both parties had an opportunity to review the written instructions and both counsel approved the additional language. Once the written instructions were given to the jurors, there was no objection and no requests from either counsel or the jury for further clarification. Based upon the record before us, Defendant has failed to show that any differences between the trial court's oral and written instructions rise to the level of "conflicting instructions" to the jury "upon a
 
 *767
 
 material point" to warrant a new trial.
 
 Carver
 
 ,
 
 286 N.C. at 183
 
 ,
 
 209 S.E.2d at 788
 
 .
 
 *159
 

 C. Plain Error Analysis
 

 Because the jury instructions were not conflicting on a material point to award Defendant a new trial, we address whether the trial court's instructions on felonious breaking and entering constitute plain error.
 

 1. Standard of Review
 

 When a defendant fails to object to the jury instructions, this Court reviews for plain error.
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) ; N.C. R. App. 10(a)(2). To demonstrate plain error, the appealing party must not only show an error occurred in the jury instruction, but also must show prejudice and "that the erroneous jury instruction was a fundamental error-that the error had a probable impact on the jury verdict."
 
 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at
 
 334 ;
 
 see also
 

 State v. Bagley
 
 ,
 
 321 N.C. 201
 
 , 213,
 
 362 S.E.2d 244
 
 , 251 (1987) (holding the error must be "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached").
 

 Only in rare cases will improper instructions "justify reversal of a criminal conviction when no objection has been made in the trial court" to award a new trial.
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 661,
 
 300 S.E.2d 375
 
 , 378 (1983) (citation and quotation marks omitted).
 

 Defendant raised no objection to either the oral instruction or the written instruction, and, in fact, affirmatively agreed to the clarification included in the written instruction on the felonious breaking or entering charge. As such, our review is limited to plain error of any alleged error in the jury instructions
 

 2. Analysis
 

 Defendant was charged with felonious breaking or entering. The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein.
 
 N.C. Gen. Stat. § 14-54
 
 (a) (2015) ;
 
 State v. Litchford
 
 ,
 
 78 N.C.App. 722
 
 ,
 
 338 S.E.2d 575
 
 (1986) (holding the trial court did not plainly error by omitting the third element of felonious breaking or entering in its final mandate to the jury where the previous instructions included all essential elements of the charge).
 

 Here, the trial court announced he intended to add clarifying language in the written jury instructions based upon review of a footnote in the North Carolina Pattern Jury Instruction for felonious breaking or entering. This footnote states "[t]he crime that [defendant] allegedly intended
 
 *160
 
 to commit should be briefly defined. Failure to define the crime
 
 may
 
 constitute reversible error." N.C.P.I. Crim. 214.30 (emphasis supplied).
 

 It is true that the failure of the trial court to define the crime that the defendant allegedly intended to commit
 
 may
 
 be reversible error
 
 . Compare
 

 State v. Foust,
 

 40 N.C.App. 71
 
 , 71,
 
 251 S.E.2d 893
 
 , 894 (1979) ;
 
 State v. Elliott
 
 ,
 
 21 N.C.App. 555
 
 , 556,
 
 205 S.E.2d 106
 
 , 107 (1974) ;
 
 with
 

 State v. Simpson
 
 ,
 
 299 N.C. 377
 
 , 383,
 
 261 S.E.2d 661
 
 , 664 (1980) ;
 
 State v. Lucas
 
 ,
 
 234 N.C.App. 247
 
 , 257-58,
 
 758 S.E.2d 672
 
 , 679-80 (2014). However, our Supreme Court in
 
 Simpson
 
 limited its previous holdings.
 
 Simpson
 
 , 299 N.C. at 382,
 
 261 S.E.2d at 664
 
 .
 

 In
 
 Simpson
 
 , the defendant was charged with burglary in the first degree, which like felonious breaking or entering, requires the defendant to have the intent to commit a felony.
 
 Id
 
 . In the instructions to the jury, the trial court noted "the defendant intended to commit larceny" but did not further define what constitutes a larceny for the jury.
 
 Id
 
 . at 382-83,
 
 261 S.E.2d at 664
 
 . The Supreme Court stated "[a]ssuming
 
 arguendo
 
 that the court's failure to define larceny was erroneous, ... we hold that such failure was not prejudicial on the facts of this case."
 
 Id
 
 . at 383,
 
 261 S.E.2d at 664
 
 .
 

 The Court explained:
 

 Defendant was on trial for burglary-not larceny. Intent to commit larceny is the
 
 felonious intent
 
 supporting the charge of burglary. In this context, the court in defining felonious intent used the word "larceny" as a shorthand statement of its definition,
 
 i.e
 
 ., to steal, take and carry away the goods of another with the intent to
 
 *768
 
 deprive the owner of his goods permanently and to convert same to the use of the taker. In the instant case, the jury did not need a formal definition of the term "larceny" to understand its meaning and to apply that meaning to the evidence. The use of the word "larceny" as it is commonly used and understood by the general public was sufficient in this case to define for the jury the requisite felonious intent needed to support a conviction of burglary. There is no reasonable possibility that failure to define "larceny" contributed to defendant's conviction or that a different result would have likely ensued had the word been defined.
 

 Id
 
 . at 383-84,
 
 261 S.E.2d at
 
 665 ;
 
 see also
 

 Lucas
 
 , 234 N.C.App. at 247, 758 S.E.2d at 672 (holding the failure to further define larceny did not constitute plain error based upon the Supreme Court's ruling in
 
 Simpson
 
 .).
 

 *161
 
 In this case, after realizing the oral instruction on felonious breaking or entering may not have been sufficient, the trial court further defined what constituted a felonious assault in the written instructions given to the jury. Presuming,
 
 arguendo,
 
 the trial court erred in its charge to the jury on felonious breaking or entering, under plain error review, Defendant has not shown prejudice or that the error was "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached."
 
 Bagley
 
 ,
 
 321 N.C. at 213
 
 ,
 
 362 S.E.2d at 251
 
 .
 

 The felonious breaking and entering charge was based upon evidence that Defendant entered Eller's home on 2 January 2016. Eller lived in the duplex next door to B.A. Eller and a police officer testified concerning the event. The evidence tends to show that, Eller had just put her baby down and was washing dishes when a man burst through her door. The man was holding a knife. He began cursing at Eller, and said, "where the f---k is [B.A.]?" Eller testified the man "was really close to [her] daughter, so [she] was freaking out" and scared "because [she] couldn't get to her [daughter] before he could." Eller testified after asking where B.A. was several times, the man then stopped, looked around, said "[o]h, s--t," and ran out the door.
 

 Eller called 911. When the police arrived she described the man as thin, black, with long dreadlocks and a mark she believed was under his left eye. She testified the man was wearing a blue jersey. The police showed Eller a lineup, which included a photo of Defendant, but she was unable to identify anyone.
 

 Defendant was not charged with assault, but with felonious breaking or entering with intent to commit an assault therein. Based upon the evidence presented and under plain error review, we are "satisfied that 'the jury did not need a formal definition of the term [assault] to understand its meaning and to apply that meaning to the evidence.' "
 
 Lucas
 
 , 234 N.C.App. at 257, 758 S.E.2d at 679 (quoting
 
 Simpson
 
 , 299 N.C. at 384,
 
 261 S.E.2d at
 
 665 ).
 

 The primary purpose of a charge is to aid the jury in arriving at a correct verdict according to law.
 
 Lewis v. Watson
 
 ,
 
 229 N.C. 20
 
 ,
 
 47 S.E.2d 484
 
 (1948). "The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side and on the other, and to bring into view the relation of the particular evidence adduced to the particular issue involved."
 
 State v. Friddle
 
 ,
 
 223 N.C. 258
 
 , 261,
 
 25 S.E.2d 751
 
 , 753 (1943). The trial court's charge on felonious breaking or entering was sufficient to enable the
 
 *162
 
 jury, in its deliberations, to arrive at a verdict with a correct understanding of the law relative to this charge.
 
 See
 

 Simpson
 
 , 299 N.C. at 383,
 
 261 S.E.2d at 664
 
 .
 

 VI. Conclusion
 

 For the reasons stated, the trial court did not err in joining the 15 May 2015 and 2 January 2016 charges for a single trial. That portion of the trial court's order is affirmed. We do not find a conflict upon a material point exists in trial court's oral and written instructions such that Defendant is entitled to a new trial.
 

 Defendant has failed to demonstrate the court committed plain error in the instructions
 
 *769
 
 to the jury on felonious breaking and entering. We affirm in part, and find no plain error in part.
 
 It is so ordered
 
 .
 

 AFFIRMED IN PART; NO PLAIN ERROR IN PART.
 

 Chief Judge MCGEE and Judge DILLON concur.