IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-435

Filed 19 November 2024

Union County, Nos. 21CRS54524 23CRS309

STATE OF NORTH CAROLINA

v.

ADRIAN OBRIAN MYERS

Appeal by defendant from judgment entered 24 August 2023 by Judge Jonathan Wade Perry in Union County Superior Court. Heard in the Court of Appeals 23 October 2024.

> *North Carolina Attorney General Joshua H. Stein, by Assistant Attorney General Matthew Baptiste Holloway, for the State.*

> *Appellate Defender's Office, by Glenn Gerding, and Assistant Appellate Defender, Jillian C. Franke, for the defendant-appellant.*

TYSON, Judge.

Adrian Obrian Myers ("Defendant") appeals from judgments entered upon a jury's verdicts of guilty of attempted first-degree murder, discharging a weapon into an occupied property, and assault with a deadly weapon inflicting serious injury. We reverse Defendant's convictions, vacate the judgments, and grant him a new trial.

## I.    Background

Defendant was cooking out with his fiancé; children; his father; his fiancé's brother, Rashad Colton; and, his friend, Zearious Miller, on 14 December 2021.

Defendant's cousin was visiting from out of town and had called and asked to see him. Miller offered to drive Colton and Defendant to see Defendant's cousin in exchange for gas money.

Defendant carried a .40 caliber handgun in his jacket pocket. Defendant had a round loaded inside the chamber. Miller also had a firearm.

On the way to meet Defendant's cousin, Miller, Colton, and Defendant stopped at Monroe Discount Beverage ("Joe's Store"). Colton needed to use the automated teller machine for cash, and Miller wanted to purchase some snacks.

Miller was completing his purchase at the cash register when Defendant saw Deoveon Byrd standing outside of Joe's Store. Byrd had went to Joe's Store with Raquan Neal. Defendant believed he recognized Byrd from an Instagram Live video, where Byrd had talked of retaliating against "a little guy" after a fight between the "little guy" and Byrd's friend at a CookOut Restaurant. Defendant believed Byrd was involved with a gang because he was wearing a burgundy or red flag. In the video Byrd had said he knew the "little guy" and had threatened to shoot up Defendant's home, where the "little guy" was purportedly located.

The "little guy" helped Defendant with small chores around his home. Defendant approached Byrd to tell him not to do anything to his home in retaliation, because his children live there and play outside the home. Defendant testified he "wasn't trying to start nothing . . . or get into any type of beef or fight[.]"

Defendant testified he saw a gun present in the waistband of Byrd's shorts.

Miller and Neal approached the two men. Miller pulled a firearm from his sweatshirt pocket and "pistol whipped" Byrd.

Defendant pulled out his firearm. Neal ran to his car to retrieve a weapon. Defendant followed Neal to the car, saying "bro, don't, don't pull that gun out, don't pull that gun out." Neal pulled the gun out "but not all the way" and "as soon as he [was] about to pull it out [Defendant] smacked his arm down."

Defendant walked to the rear of the vehicle where Neal could not see or shoot at him. Defendant took the safety off his gun as he backed away. Miller approached Neal and tried to grab his gun. Defendant believed he heard five shots and thought Miller and Neal were shooting at each other. Defendant racked the slide on his gun and it ejected a round, surprising him. Defendant testified he normally did not keep a round loaded in the chamber for safety purposes.

Miller fell down after having been shot. Defendant pointed his gun at Neal because he believed Neal was going to shoot at him. Defendant saw Neal in possession a weapon with a thirty-round magazine.

Neal ran into Joe's Store and Defendant fired at him. Defendant testified he was not trying to kill Neal. He "was just scared. I shot because I was scared." Defendant fired eight times at Neal. Neal, injured from gunfire, found refuge inside Joe's Store and called for emergency assistance. Defendant took Miller to the hospital, but he did not remain at the hospital fearing retaliation.

The next day Defendant met with law enforcement, gave a statement and

turned over his .40 caliber handgun and Miller's handgun. Defendant was indicted with attempted first-degree murder, discharging a weapon into occupied property, injury to personal property, and assault with a deadly weapon inflicting serious bodily injury on 7 February 2022.

The State dismissed the injury to personal property charge. Defendant was convicted of attempted first-degree murder, discharging a weapon into occupied property, and assault with a deadly weapon inflicting serious injury. Defendant's sentences for attempted first-degree murder and assault with a deadly weapon inflicting serious injury were consolidated for judgment and Defendant was sentenced to an active imprisonment term of 157 to 201 months. Defendant was also sentenced to 20 to 26 months for his conviction for discharging a weapon into occupied property, to run consecutive to his other judgment. Defendant appeals.

## II. Jurisdiction

Jurisdiction lies with this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. Issues

Defendant argues the trial court erred by failing to instruct the jury on self-defense and by allowing the jury to view Neal's medical records for the first time during deliberations when they had not been published during the evidentiary portion of Defendant's trial.

## IV. Self-Defense

## A. Standard of Review

A defendant is entitled to a self-defense instruction when "competent evidence of self-defense is presented at trial." *State v. Morgan*, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (emphasis omitted). Defendant's evidence, taken as true, is sufficient to support the instruction, even if contradictory evidence exists. *State v. Moore*, 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010). "[T]he evidence is to be viewed in the light most favorable to the defendant." *Id.* (citation omitted). "[A] defendant entitled to *any* self-defense instruction is entitled to a *complete* self-defense instruction, which includes the relevant stand-your-ground provision." *State v. Bass*, 371 N.C. 535, 542, 819 S.E.2d 322, 326 (2018) (emphasis supplied).

Determining whether a trial court erred in instructing the jury is a question of law reviewed *de novo*. *State v. Voltz*, 255 N.C. App. 149, 156, 804 S.E.2d 760, 765 (2017) (citation omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).

## B. Analysis

Defendant argues the trial court erred by failing to instruct the jury on self-defense. Defendant asserts he should have received the self-defense instruction for both his attempted first-degree murder and for assault with a deadly weapon inflicting serious injury. *See State v. Clay*, 297 N.C. 555, 565, 256 S.E.2d 176, 183

(1979), *overruled on other grounds by State v. Davis*, 305 N.C. 400, 290 S.E.2d 574

(1982) ("In cases involving assault with a deadly weapon, trial judges should, in the

charge, instruct that the assault would be excused as being in self-defense[.]").

Defendant's counsel presented proposed jury instructions, including

instructions on self-defense. During the charge conference, the trial court and

Defendant's attorney engaged in the following exchange:

> The Court: Let me do this, just for the record, after overnight review of the materials submitted by both attorneys, my review of the testimony and then some additional research I did into the issue, [Defendant's counsel], I don't think I even have discretion to exercise. Based on the testimony and the case law I think I'm precluded from giving the instruction on self defense. That's my understanding of the law.
>
> [Defendant's counsel]: Well, we obviously disagree and would point out that we feel like it's probable in the discretion of the jury to make that determination and there's some evidence we would contend. And so we appreciate you looking at it but do object to it. And please note our exception if you do not include it as part of the jury instructions.
>
> The Court: Sure. And again, I think as I indicated, I don't think that stops an argument made in closing arguments about self defense, I just think the legal instruction is not entitled to be included at this point.

Self-defense is a substantial and essential feature of a case, and a defendant

who presents competent evidence of self-defense at trial is entitled to a jury

instruction on this defense. *See Morgan*, 315 N.C. at 643, 340 S.E.2d at 95. "Where

there is evidence that defendant acted in self-defense, *the court must charge* on this

aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence." *State v. Dooley*, 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974) (emphasis supplied) (citations omitted).

In North Carolina, the right to use deadly force to defend oneself is provided and strictly protected both by statute and case law. Under our General Statutes:

> (a) A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, *a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if either of the following applies:*
>
> > *(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.*
> >
> > *(2) Under the circumstances permitted pursuant to G.S. 14-51.2.*

N.C. Gen. Stat. § 14-51.3(a) (2023) (emphasis supplied).

There are two forms of self-defense available to a defendant: perfect self-defense and imperfect self-defense. Our Supreme Court has explained the difference:

> Perfect self-defense excuses a killing altogether, while imperfect self-defense may reduce a charge of murder to voluntary manslaughter. For defendant to be entitled to an instruction on either perfect or imperfect self-defense, the evidence must show that defendant believed it to be necessary to kill his adversary in order to save himself from death or great bodily harm. In addition, defendant's belief must be reasonable in that the circumstances as they appeared to him at the time were sufficient to create such

a belief in the mind of a person of ordinary firmness.

*State v. Ross*, 338 N.C. 280, 283, 449 S.E.2d 556, 559-60 (1994) (internal quotation

marks and citations omitted).

A defendant is entitled to an instruction on perfect self-defense when the

following four elements are satisfied at the time of the attempted killing:

> (1) It appeared to defendant and he believed it necessary to
> kill the deceased in order to save himself from death or
> great bodily harm; and
>
> (2) defendant's belief was reasonable in that the
> circumstances as they appeared to him at that time
> were sufficient to create such a belief in the mind of a
> person of ordinary firmness; and
>
> (3) defendant was not the aggressor in bringing on the
> affray, i.e. he did not aggressively and willingly enter
> into the fight without legal excuse or provocation; and
>
> (4) defendant did not use excessive force, i.e., did not use
> more force than was necessary or reasonably appeared
> to him to be necessary under the circumstances to
> protect himself from death or great bodily harm.

*State v. Bush*, 307 N.C. 152, 158, 297 S.E.2d 563, 568 (1982) (citing *State v. Norris*,

303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981)).

Our Supreme Court has examined the applicability of imperfect self-defense

and the overlay of imperfect self-defense and perfect self-defense:

> [I]f defendant believed it was necessary to kill the deceased
> in order to save herself from death or great bodily harm,
> and if defendant's belief was reasonable in that the
> circumstances as they appeared to her at the time were
> sufficient to create such a belief in the mind of a person of
> ordinary firmness, but defendant, although without

murderous intent, was the aggressor in bringing on the difficulty, or defendant used excessive force, the defendant under those circumstances has only the *imperfect right of self-defense*, having lost the benefit of perfect self-defense, and is guilty at least of voluntary manslaughter.

An imperfect right of self-defense is thus available to a defendant who reasonably believes it necessary to kill the deceased to save himself from death or great bodily harm even if defendant (1) might have brought on the difficulty, provided he did so *without* murderous intent, and (2) might have used excessive force. Imperfect self-defense therefore incorporates the first two requirements of perfect self-defense, but not the last two.

If one brings about an affray with the intent to take life or inflict serious bodily harm, he is not entitled even to the doctrine of imperfect self-defense; and if he kills during the affray he is guilty of murder. If one takes life, though in defense of his own life, in a quarrel which he himself has commenced with intent to take life or inflict serious bodily harm, the jeopardy into which he has been placed by the act of his adversary constitutes no defense whatever, but he is guilty of murder. But, if he commenced the quarrel with no intent to take life or inflict grievous bodily harm, then he is not acquitted of all responsibility for the affray which arose from his own act, but his offense is reduced from murder to manslaughter.

*State v. Mize*, 316 N.C. 48, 52-53, 340 S.E.2d 439, 441-42 (1986) (internal citation omitted).

"A defendant cannot benefit from perfect self-defense and can only claim imperfect self-defense, if he was the aggressor or used excessive force." *State v. Broussard*, 239 N.C. App. 382, 385, 768 S.E.2d 367, 369-70 (2015) (citing *State v. Bush*, 307 N.C. 152, 158-59, 297 S.E.2d 563, 568 (1982)).

The evidence, viewed in the light most favorable to Defendant, tended to show Defendant approached Byrd outside of Joe's Store. Defendant and Byrd began talking. Defendant was not trying to initiate a fight or was in disagreement with Byrd. Defendant had a weapon and saw Byrd had a gun present in the waistband of his shorts. Neal and Miller approached Defendant and Byrd.

Shortly after talking Miller began to assault Byrd by "pistol whipping" him. Defendant took out his gun. Neal went to Byrd's vehicle to retrieve a gun, Defendant followed and attempted to prevent him from accessing and using his weapon. Defendant heard shots as Miller and Neal fought. Defendant saw Neal possessing a weapon. Defendant fired at Neal as he went into the store. Defendant testified he "was scared" and believed Neal was going to point the gun and shoot at him. Defendant further testified he was trying to "defend himself."

Viewed in the light most favorable to Defendant, the evidence is sufficient to support an instruction of at least imperfect self-defense, if not perfect self-defense. Presuming a conflict in the evidence of the identity of the initial aggressor exists, it is be resolved by the jury, after being fully and properly instructed. *See Moore*, 363 N.C. at 796, 688 S.E.2d at 449. We decline to address Defendant's remaining argument on Neal's medical records as it is unlikely to recur on remand.

## V.  Conclusion

Defendant presented competent evidence tending to show he was acting in self-defense. The trial court was required to instruct the jury on self-defense. *See*

*Morgan*, 315 N.C. at 643, 340 S.E.2d at 95.  The trial court's failure to provide the requested instructions on self-defense was error and prejudicial.  Defendant is entitled to a new trial with full and proper instructions on self-defense, if submitted to the jury.  *It is so ordered.*

NEW TRIAL.

Chief Judge DILLON and Judge HAMPSON concur.